**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LESLY LICETT MORALES-CANALES,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-1092

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A74-152-292)

Submitted: November 30, 1998

Decided: December 29, 1998

Before MURNAGHAN and TRAXLER, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Donald L. Schlemmer, Washington, D.C., for Petitioner. Frank W.
Hunger, Assistant Attorney General, Karen Fletcher Torstenson,
Assistant Director, Linda S. Wendtland, Senior Litigation Counsel,
Office of Immigration Litigation, Civil Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Lesly Licett Morales-Canales petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. On appeal, she claims that: (1) the Board violated her due process rights by failing to consider all the evidence in the record; (2) the Board erred in holding that she was not persecuted on political or social grounds; (3) the Board erred in denying her application for withholding of deportation even though she established a clear probability of persecution; (4) international law supports her claims; and (5) the Board erred in denying relief on the basis of her and her husband's credibility. Because substantial evidence supports the Board's decision, we affirm.

To establish eligibility for a grant of asylum, an alien must demonstrate that she is a refugee within the meaning of the Immigration and Nationality Act (Act). The Act defines a refugee as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998). Fears which may be well-founded, but do not arise on account of an applicant's race, religion, nationality, membership in a social group, or because of political opinion, do not qualify an alien as a refugee. See Matter of Mogharrabi, 19 I. & N. Dec. 439, 447 (BIA 1987).

For a claim of persecution based on political opinion to succeed, the record must compel the conclusion that the alien has expressed a political opinion, and that the alien has a well-founded fear of persecution specifically because of the political opinion. See INS v. Elias-Zacharias, 502 U.S. 478, 481-83 (1992); Chen Zhou Chai v. Carroll, 48 F.3d 1331, 1342-43 (4th Cir. 1995). The alien bears the burden of proving that she is a refugee as defined by the Act. See 8 C.F.R. § 208.13(a) (1998).

2

The well-founded fear of persecution standard contains both an objective and a subjective element. The subjective element requires a genuine fear on the part of the alien. See Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts which would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992); M.A. v. INS, 899 F.2d 304, 311 (4th Cir. 1990). The alien does not need to show that she would be singled out individually if she can show: (1) a pattern or practice of persecuting groups of persons similarly situated; and (2) her own identification with such a group such that her fear of persecution upon return is reasonable. See 8 C.F.R. § 208.13(b)(2) (1998).

We must uphold the Board's determination that Morales-Canales is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Morales-Canales] was such that a reasonable fact finder would have to conclude that the requisite fear of persecution existed." Elias-Zacharias, 502 U.S. at 481.

Morales-Canales, who entered the United States without inspection, disagrees with the Board's finding that she failed to qualify for asylum and withholding of deportation. After a thorough review of the administrative record, we conclude that substantial evidence supports the Board's finding that Morales-Canales did not satisfy her statutory burden.

Morales-Canales, a married female who is a native and citizen of Honduras, testified before an Immigration Judge (IJ) that she experi-

_____

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

enced past persecution and feared future persecution in Honduras based on the political opinion imputed to her because of her father's activities, and because she is a member of her father's family. She testified that her father was an active member of the "Liberal Party" and involved in the promotion of human rights and improvement of the plight of the poor. She testified that she was too young to be a member of the "Liberal Party," but that she assisted her father in collecting money, recruiting new members, and distributing pamphlets. According to Morales-Canales, the military did not like her father's participation in the "Liberal Party" and detained him for six months in 1994 because of his party affiliation. She testified that although she reported her father's disappearance, no action was taken to find him.

Morales-Canales further testified that after her father's detention, she began receiving death threats. In September 1995, she was raped and beaten by military men. She stated that one of the men informed her that they were seeking vengeance on her because of her father. She testified that the men's faces were covered with bags, but that they wore military uniforms. Although she reported the attack to authorities, the police took no action against the perpetrators. Morales-Canales contends that the rape was an act of persecution based on her membership in the particular social group of her father's family. She provided documentation corroborating the rape from a doctor to whom she went for medical assistance on the same day as the rape. Morales-Canales also stated that this type of treatment has occurred to other people whose families were active members of the "Liberal Party." She stated that she subsequently went to a different city for a few days, returned home to obtain necessary materials, and then fled to the United States.

Morales-Canales's husband testified that he came to the United States before his wife in order to bring her here so that she could avoid further problems caused by her father's political activities. He testified that he was in the United States when his wife was raped. He also confirmed that Morales-Canales's father was detained for six months by the military because of his involvement in the "Liberal Party," particularly for assisting the poor. Both Morales-Canales and her husband testified that Morales-Canales's father was released in July 1995 and that his whereabouts are unknown.

4

The IJ found that Morales-Canales's testimony was not credible in regard to her analysis of the motivation behind the harm she alleged she suffered. Specifically, the IJ found that although she may have been harmed, the harm was not the result of her persecution. After considering all the evidence in the record, the Board agreed with the IJ that Morales-Canales was not a credible witness. The Board also noted that Morales-Canales has not established past persecution or a well-founded fear of persecution if she were to return to her native country.

We review the credibility findings of the IJ and the Board for substantial evidence. See Figeroa, 886 F.2d at 78 (citing Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir. 1987); Saballo-Cortez v. INS, 761 F.2d 1259, 1262 (9th Cir. 1985)). Substantial evidence is evidence that a reasonable person might accept as adequate to support a conclusion. See Turcios, 821 F.2d at 1398. Although an IJ's credibility determinations are granted substantial deference by a reviewing court, a trier of fact who rejects a witness's positive testimony because in his judgment it lacks credibility should offer specific, cogent reasons for his disbelief. Figeroa, 886 F.2d at 78. We find that the IJ supported his credibility determinations with specific, cogent reasons for his disbelief and the Board cited specific reasons for agreeing with the IJ's negative credibility determination.

As the Board noted in its decision, the inconsistencies and misleading statements noted by the IJ implicate the core of Morales-Canales's asylum claim, particularly her rape and her father's detention. The IJ found that "[s]he was not articulate enough to give a reliable account and lacks information regarding the perpetrators of the rape or the persons who incarcerated her father." Morales-Canales could not conclusively identify her rapists. She initially stated that the rapists were military men. However, when asked later whether they were military, she said she did not know and that "they are called death squads." However, as the IJ noted, the death squads are not an official organization.

The IJ and the Board also noted other inconsistencies in Morales-Canales's testimony. For example, Morales-Canales and her husband differed in their testimony about the date of their marriage and about where they lived after they were married. Morales-Canales also lied

5

to immigration officers when she was first apprehended. She told the immigration officers that she was a Mexican. Only after the Mexican authorities refused to accept her back in Mexico, however, did the immigration authorities find out she was actually a citizen of Honduras. Even after the INS authorities were given correct information about her nationality, she still lied about her husband's whereabouts. She told the INS agents that her husband was in Honduras, when he was actually in the United States. She testified at the immigration hearing that she lied about her husband's whereabouts because she did not want her husband to face deportation proceedings. The IJ noted that it seemed incredible that her father, who was allegedly an active member of the "Liberal Party," would have been imprisoned during the time the "Liberal Party" was in power. We find that these are specific, cogent reasons for the IJ's and Board's negative credibility findings and they are supported by substantial evidence. Because substantial evidence supports the Board's finding that Morales-Canales is not a credible witness, whether international law supports her claims is irrelevant.

We also find that substantial evidence supports the Board's conclusion that Morales-Canales has not established past persecution or a well-founded fear of persecution if she were to return to her native country. Although the Board noted that the harm Morales-Canales suffered was horrendous, it found that she has not shown that her attackers were motivated by any of the grounds enumerated in the Act. Based on the information provided by Morales-Canales's psychologist, her father appeared to have been involved in the embezzlement of funds. Therefore, as the Board concluded, the attack was of a personal nature, which is not protected by the Act. See Huaman-Cornelio, 979 F.2d at 1000. The IJ also concluded, based on the comment made by one of the rapists, that the attack occurred because of a personal vendetta between the rapists and Morales-Canales's father. Furthermore, Morales-Canales could not identify her attackers and has not offered any credible evidence that they were connected with authorities. Thus, based on the same reasoning, it is also not clear that her father's problems were caused by his political beliefs rather than his criminal activities. Lastly, based on the fact that the "Liberal Party" retains control in Honduras, Morales-Canales has not shown that a reasonable person in her circumstances would fear persecution on account of her race, religion, nationality, membership in a particu-

6

lar social group, or political opinion. Therefore, we find that substantial evidence supports the Board's finding that Morales-Canales was ineligible for a grant of asylum.

Morales-Canales also contends that her claims are supported by international law. The IJ and the BIA do not have jurisdiction over a claim arising under customary international law. Galo-Garcia v. INS, 86 F.3d 916, 918 (9th Cir. 1996). "Neither the Immigration and Nationality Act nor its regulations affirmatively grants jurisdiction" over such claims. Id. Morales-Canales must establish her eligibility for asylum or withholding of deportation within the framework of the comprehensive scheme enacted by Congress for the admission of refugees into this country. Id. The Refugee Act of 1980 was designed to bring United States law into conformity with international law. See INS v. Cardoza-Fonseca, 480 U.S. 421, 424 (1987).

Morales-Canales insists she qualified for withholding of deportation. The standard for withholding of deportation is more stringent than that for granting asylum. See id., 480 U.S. at 431-32. To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. Because substantial evidence supports the Board's finding that Morales-Canales is ineligible for asylum, she cannot meet the higher standard for withholding of deportation.

Accordingly, we affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7