Hugo TURCIOS, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 83–7199.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1985.

Decided July 14, 1987.

James R. Mayock, San Francisco, Cal., and Della Hinn Bahan, Los Angeles, Cal., for petitioner.

Linda B. Adams, Washington, D.C., for respondent.

Before NELSON, CANBY and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Hugo Turcios, a native and citizen of El Salvador, was arrested in 1982 and charged with deportability under 8 U.S.C. § 1251(a)(2) (entry without inspection). He conceded deportability and applied for asylum and withholding of deportation under 8 U.S.C. §§ 1158(a) and 1253(h). Turcios petitions for review of the Board of Immigration Appeal's (BIA) denial of his applications for asylum, withholding of deportation, and voluntary departure. He argues that (1) substantial evidence does not support the immigration judge's (IJ) finding that Turcios was not credible, (2) he has established a well-founded fear and a clear probability of persecution based on his political opinions, and (3) he has met his burdens of proof for both asylum and withholding of deportation. We grant the petition for review and remand to the BIA for exercise of its discretion on Turcios's asylum claim.

## I

### Statutory Framework

Turcios applied for two forms of relief: withholding of deportation under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h), and asylum under section 208(a) of the Refugee Act of 1980, 8 U.S.C. § 1158(a). To qualify for withholding of deportation, Turcios must show a clear probability that if returned to his country his life or freedom would be threatened "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h); *INS v. Stevic,* 467 U.S. 407, 421 n. 15, 104 S.Ct. 2489, 2496 n. 15, 81 L.Ed.2d 321 (1984); *Bolanos-Hernandez v. INS,* 767 F.2d 1277, 1281 (9th Cir.1985). Applicants for withholding of deportation must show: (1) a likelihood of persecution, i.e. a threat to life or freedom; (2) persecution by the government or by a group which the government is unable to control; (3) persecution resulting from the petitioner's political beliefs; and (4) the petitioner is not a danger or a security risk to the United States. *Zepeda-Melendez v. INS,* 741 F.2d 285, 289 (9th Cir.1984). Only the first and third elements are at issue in this case. The Attorney General must withhold deportation upon proof that the applicant meets the statutory requirements. *Bolanos-Hernandez,* 767 F.2d at 1281; *see also Stevic,* 467 U.S. at 421 n. 15, 104 S.Ct. at 2496 n. 15.

An alien may be granted asylum if he is unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(a); 1101(a)(42)(A).

We review the factual findings underlying the BIA's denial of withholding of deportation and asylum under the substantial evidence standard. *Argueta v. INS,* 759 F.2d 1395, 1396 (9th Cir.1985); *McMullen v. INS,* 658 F.2d 1312, 1316 (9th Cir.1981). The substantial evidence test is essentially a case-by-case analysis requiring review of the whole record. *McMullen,* 658 F.2d at 1317. Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The reviewing court must consider evidence contravening the agency's determination. *McMullen,* 658 F.2d at

1318 (citing *Carter Products Inc. v. Federal Trade Commission,* 268 F.2d 461, 493 (9th Cir.), *cert. denied,* 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (1959)).

## II

### Withholding of Deportation

#### A. The Credibility Findings

■ This court reviews credibility findings for substantial evidence. *Saballo-Cortez v. INS,* 761 F.2d 1259, 1262 (9th Cir.1985); *see also Zavala-Bonilla v. INS,* 730 F.2d 562, 566 (9th Cir.1984). Although an immigration judge's credibility findings are granted substantial deference by reviewing courts, *Sarvia-Quintanilla v. INS,* 767 F.2d 1387, 1395 (9th Cir.1985), a trier of fact who rejects a witness's positive testimony because in his or her judgment it lacks credibility should "offer 'a specific, cogent reason for [his] disbelief.'" *Damaize-Job v. INS,* 787 F.2d 1332, 1338 (9th Cir.1986) (quoting *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981)). We find that the statement of reasons given for rejecting Turcios's detailed testimony inadequate and that substantial evidence does not support the adverse credibility finding.

#### 1. Turcios's Testimony

On direct examination Turcios testified as follows. He was a medical student in San Salvador from 1971 to 1977. He stated that he participated in demonstrations, but was not affiliated with any student organizations and considers himself neutral regarding the guerrillas and the Salvadoran government.

Turcios further testified that on July 20, 1977 he was sitting in a park in San Salvador talking with a university professor known for his leftist views and activities. Armed and uniformed officers of the National Police arrested Turcios and the professor, without asking for identification and without explanation. They were taken to the General Headquarters of the National Police and placed in cells with other political prisoners.

The next day, Turcios testified, he was removed from his cell, blindfolded, and beaten. His interrogators accused him of involvement in guerrilla politics, and although Turcios denied the accusation, he stated that they did not believe him. They continued questioning him about his affiliations with guerrilla groups and asked him to name his companions. To coerce answers, they choked him with a wire, put a gun in his mouth and threatened to fire it, and subjected him to electric shocks. They told him that if he did not cooperate they would kill him and throw his body into the river. They forced him to sign a blank page which he believed the police would use to create a false confession.

Later, Turcios was returned to his cell. Although he was not tortured again, he could hear the screams of other victims. After being held for one month he was transferred to a cell in the basement where he found the professor. They were left without light, clothes, or blankets and were given food and water only once every three days.

Turcios testified that he was not allowed to see his family. Once he saw a friend by chance and was able to send a message to his family. His mother wrote to the Minister of the Judiciary and was told that her son had been convicted and sentenced for participating in guerrilla politics. Turcios testified that he had never appeared before a judge. His family publicized his disappearance and pressed for his release.

Two months after the arrest, the professor began a hunger strike to protest the illegal incarceration and because he had contracted malaria. Turcios and the professor were taken before the Chief of the Judiciary Police. The police later took them to the Guatemalan border at midnight and released them. The police told them that they could reenter El Salvador but not at the same place on the border. Turcios believed he was released in Guatemala to hide the fact that he had been detained in violation of the Salvadoran constitution and to allow the police to tell their families that they had left voluntarily.

Turcios testified that he and the professor walked all day and night to another part of the border. They entered El Salva-

dor at the end of September 1977, avoiding the immigration authorities for fear of another detention. They stayed with a friend of the professor's near the border for three days and then traveled to San Salvador. Turcios testified that he went to see his family because they did not know whether he was still alive and because he needed to see a doctor. In San Salvador Turcios spent two days in the hospital and was treated for dehydration, urinary infection, and nervous problems. He testified that he still has problems with his nerves.

When he first returned to San Salvador, Turcios testified that he found the situation somewhat calmer than before. His anxiety increased, however, as more bombings occurred, and after his neighbors told him that the streets outside his house were full of National Guardsmen at night. He testified that they watched him continuously. He knew that the police targeted political persons and university students and abducted such persons from their houses at night. A friend warned him to be careful and not let the police catch him talking again to the professor. Because he feared arrest and possible death, he obtained a passport and fled the country on March 7, 1978. He believes that if he is returned to El Salvador, he will be arrested and killed because the authorities will find his name in the National Police files.

On cross-examination, Turcios stated he had received both a passport and cedula (apparently an identification card held by all Salvadorans) in 1978, shortly before he fled El Salvador. He traveled through Guatemala and Mexico and entered the United States without inspection in March 1978. He testified he has worked in this country as a bus boy, gardener, painter,

and construction worker. The INS arrested him three times. He told them he was Mexican *to avoid being sent back to* El Salvador. When asked why he never sought a legal visa to enter the United States, Turcios stated it had not occurred to him.

### 2. The IJ's Credibility Findings

 In his oral order the IJ made a general statement that Turcios "did not establish his credibility due to his evasiveness in answering questions." The IJ also based the adverse credibility finding on Turcios's admission that he lied about his citizenship to United States authorities and on Turcios's "repeated violations of the Immigration Laws."

The IJ labels only one of Turcios's answers evasive. Yet this answer was explanatory, not evasive.[1] The IJ does not point to any other portion of Turcios's testimony he found evasive. Review of the record does not reveal evasive testimony deserving of a negative credibility finding. Without more specific direction and in the absence of obvious evasiveness, we are unable to say the IJ's adverse credibility finding is supported by substantial evidence.

The IJ also found that Turcios lacked credibility because he admitted that he lied to immigration authorities when he told them he was Mexican. Untrue statements by themselves are not reason for refusal of refugee status and it is the examiner's responsibility to evaluate such statements in the light of all the circumstances of the case. United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status* ¶ 199, at 46 (Geneva 1979) (*Handbook*). Turcios's misrepresentations are

---

**1.** The answer which the IJ specifically found evasive was:

Q: When did you decide to apply for asylum in this country?
A: About a year and a half ago I met a man in Los Angeles, and he told me that he had come from the Immigration Office in Los Angeles and asked about my case, and he told me that I could fix papers and he told me that he could accompany me, and I felt that they would arrest me and I would not be free at that time.

Q: So, you didn't attempt to fix papers, at that time?
A: No.
Q: Why didn't you consider trying to get legal help?
A: I'd [sic] hadn't considered it necessary because I was already here and I was waiting for the United States Government when they would consider asylum to all my countrymen, I would be included also.

wholly consistent with his testimony and application for asylum: he did so because he feared deportation to El Salvador. In this context, Turcios's statement to the INS does not detract from but supports his claim of fear of persecution. It does not support a negative credibility finding.

The BIA stated that it found no error in the IJ's finding that Turcios was not a credible witness. As the BIA appears to have adopted the IJ's reasons for the negative credibility finding, the BIA's decision is not supported by substantial evidence.

### B. Political Opinion

 The BIA dismissed Turcios's appeal on the alternative ground that his testimony, even if credible, did not establish a clear probability of political persecution.

The INS contends that Turcios's arrest, torture, and confinement were not based on a political opinion because when the Salvadoran police arrested Turcios in 1977, Turcios disclaimed any involvement in politics or guerrilla insurgency.

However, the record supports a conclusion that the persecution was on account of Turcios's political opinion. First, in response to the trial attorney's question, "Is it correct to say that you would consider yourself neutral as far as the guerrillas and the Government?" Turcios said "yes." Neutrality is a "political opinion", and it is not necessary that we know the motivation for an applicant's political opinion. *Bolanos-Hernandez,* 767 F.2d at 1286-87. Had Turcios not been neutral, but supportive of the government, it is unlikely that the government would have persecuted him.

Second, Turcios's actions constituted an expression of political opinion. *See Bolanos-Hernandez,* 767 F.2d at 1286. When he was arrested, Turcios was discussing the government's intervention in the university with a known leftist. He participated in demonstrations, and other members of his family actively opposed the government. Persecution because of an overt manifestation of a political opinion is persecution because of a political opinion. *Id.* The record as a whole convinces us that the persecutors perceived Turcios as a guerrilla because of Turcios's activities and affiliations.

### C. Clear Probability of Persecution

 Turcios must show a clear probability that his life or freedom would be threatened if he is returned to El Salvador. *Stevic,* 467 U.S. at 424, 104 S.Ct. at 2498. Substantial evidence does not support the BIA's finding that there is no clear probability of a threat to his life or freedom.

Turcios's confinement and torture, of course, provide the primary basis for our conclusion. We also find significant Turcios's testimony that he had signed a blank confession, that after his release from prison he was watched continuously, that other professors and university students had been abducted from their homes at night, that he was warned by a friend to be careful, and that he believes that if he is returned to El Salvador, the immigration authorities and the National Guard will check the list of suspicious persons at the airport, find his name on it, arrest him, and kill him.

The IJ distorted Turcios's testimony and relied on unfounded presumptions in finding that Turcios had failed to establish a clear probability of persecution upon returning to El Salvador. First, he distorted Turcios's testimony about a list of suspicious persons in El Salvador and termed the testimony vague. Turcios testified about two lists. First, he testified that when the Salvadoran soldiers took him to the Guatemalan border, the Guatemalan guard checked a list and found that Turcios's name was not on it. Second, he testified that he feared returning to El Salvador because he was certain the government had his name on a list or in a police file, "like all countries have." Although Turcios's belief that the Salvadoran police maintain lists of detainees is reasonable and was uncontroverted, the IJ rejected it and confused the two lists.

Second, the IJ placed great weight on Turcios's remaining in El Salvador for several months after his release from prison, obtaining a passport and cedula (apparently

an identification card held by all Salvadorans), and leaving the country. The IJ reasoned that if the government had wanted to rearrest Turcios, it would not have issued him a passport and cedula.

The reasoning is flawed in several respects. Persecution does not require an arrest; Turcios's freedom was threatened when he was watched continuously and felt compelled to restrict his activities. *Damaize-Job v. INS*, 787 F.2d 1332, 1336 (9th Cir.1986). Furthermore, "the mere possession of a valid national passport is no bar to refugee status." *Handbook*, ¶ 48, at 14; *Damaize*, 787 F.2d at 1336. Turcios testified that it was easy to obtain a passport and cedula and that everyone got them without trouble; he obtained them in one day.

The IJ presumed that a government that allows a person to leave the country will not persecute him. In the political sphere, persecutors may want to eliminate their political opposition and to achieve that end will either persecute them or allow them to leave. *See Saballo-Cortez*, 761 F.2d at 1271 (Pregerson, J., dissenting) ("To say that the authorities let Saballo-Cortez leave is a far cry from concluding that they would welcome his return."); *see also Handbook*, ¶ 48, at 14 ("Possession of a passport cannot therefore always be considered as an indication of the absence of fear. A passport may even be issued to a person who is undesired in his country of origin, with the sole purpose of securing his departure."). Our previous cases finding this inference reasonable are distinguishable because in those cases the petitioner had only suffered minimal persecution, if at all, prior to leaving the country, and accordingly we required a greater showing to establish the persecutor's intention to persecute in the future. *See Saballo-Cortez*, 761 F.2d at 1264; *Espinoza-Martinez v. INS*, 754 F.2d 1536, 1540 (9th Cir.1985).

Third, the IJ may also have relied on the INS attorney's questioning which implied that Turcios will not be persecuted again because the persecutors exhausted their inquiry, learned that Turcios is not a leftist, and consequently will ignore him if he returns to El Salvador. The evidence weighs against this inference for several reasons. The record suggests that the main factor in Turcios's release was not the completion of an investigation but the pressure brought by his family and the professor's hunger strike. Turcios also testified that although they could not find anything against him when they first released him, it was only a superficial investigation and they continued watching him. Finally, the police apparently arrested him the first time because his status as a student, and his association with the professor led them to believe that Turcios was a guerrilla. These factors might lead the police to persecute him again.

### D. Lack of Corroborative Evidence

■ The INS contends that Turcios's application is insufficient because he failed to introduce corroborative evidence. We have rejected the contention that corroborative evidence is required in all cases. *Bolanos-Hernandez*, 767 F.2d at 1288. Exactly what amount of specific evidence is required depends on the facts and circumstances of each case. *Espinoza-Martinez*, 754 F.2d at 1540. Authentic refugees rarely are able to offer direct corroboration of specific threats or specific incidents of persecution. *See Bolanos-Hernandez*, 767 F.2d at 1285; *see also Argueta*, 759 F.2d at 1397. Therefore, an alien's unrefuted and credible testimony may be sufficient. *Sarvia-Quintanilla*, 767 F.2d at 1393. Turcios testified in great detail about his arrest, torture, confinement, and release. Furthermore, his act of abandoning his studies and fleeing El Salvador corroborates his testimony. *See Handbook* ¶ 39, at 15 ("It may be assumed that ... a person would not normally abandon his home and country without some compelling reasons."). If his testimony is credible, it is not insufficient for lack of corroboration and Turcios has demonstrated a clear probability of persecution.

### III

### Asylum

■ Because Turcios has established a clear probability of persecution, he has also

demonstrated a well-founded fear of persecution for purposes of asylum. *INS v. Cardoza-Fonseca,* — U.S. —, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (concluding that standard for withholding of deportation is stricter than standard for asylum).

One of the benefits of a grant of asylum is that it automatically permits an alien to apply for permanent resident status after one year, 8 U.S.C. § 1159(b). Therefore, Turcios may wish to be granted asylum in addition to prohibition against deportation. We remand Turcios' asylum claim to the Attorney General so that he may exercise his discretion. *See Bolanos-Hernandez,* 767 F.2d at 1282; 8 U.S.C. § 1158(a).

## IV

### Other Contentions

Because we conclude that Turcios has established a clear probability of persecution, we need not consider his contention that the interpretation and transcription of the asylum hearing violated due process. Nor need we now reach Turcios's contention that the BIA abused its discretion by denying voluntary departure.

## V

### Conclusion

We conclude that the BIA's reasons for the adverse credibility finding are inadequate and the finding is not otherwise supported by substantial evidence. We hold that substantial evidence does not support the BIA's finding that Turcios has failed to show a clear probability that his life or freedom will be threatened.

We grant the petition for review, reverse the denial of withholding of deportation, and remand the case. The Attorney General is prohibited from deporting Turcios pursuant to section 243(h) and the BIA shall exercise its discretion regarding Turcios's section 208(a) asylum claim. *Bolanos-Hernandez,* 767 F.2d at 1287–88. Any further petitions for review shall be directed to this panel. *Zavala-Bonilla,* 730 F.2d at 568.

PETITION GRANTED, REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.