113 F.3d 1240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eden De Claro DE LAS ALAS, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-70432.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 21, 1997.*
Decided April 30, 1997.
 
 Before: BROWNING, THOMPSON, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Eden De Claro De Las Alas, a native and citizen of the Philippines, petitions for review of the decision of the Board of Immigration Appeals ("BIA") affirming the order of an immigration judge ("IJ") denying her applications for asylum and withholding of deportation under 8 U.S.C. §§ 1158(a) and 1253(h). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we grant the petition.
 
 
 3
 De Las Alas contends that the BIA erred by concluding she failed to present plausible evidence that she had suffered past persecution on account of her political opinion. We agree.
 
 
 4
 We review the factual findings underlying the BIA's denial of asylum and withholding of deportation, as well as its credibility findings, under the substantial evidence standard. See Berroteran-Melendez, 955 F.2d 1251, 1255-56 (9th Cir.1991). To be eligible for asylum, an applicant must demonstrate past persecution, or a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. §§ 1101(a)(42)(A), 1158(a). Persecution may be by a group which the government is unable or unwilling to control. See Bolanos-Hernandez v. INS, 767 F.2d 1277, 1284 (9th Cir.1984). An asylum applicant "must present some evidence, direct or circumstantial," that the persecutor was motivated by the applicant's actual or imputed political opinion. See Canas-Segovia v. INS, 970 F.2d 599, 601 (9th Cir.1992) (citing INS v. Elias-Zacaria, 502 U.S. 478, 483 (1992)). To obtain reversal, an applicant must show that his or her evidence " 'was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.' " Shirazi-Parsa v. INS, 14 F.3d 1424, 1427 (9th Cir.1994) (quoting Elias-Zacarias, 502 U.S. at 481). Rape and sexual assault are examples of physical harm that constitutes persecution. See Lopez-Galarza v. INS, 99 F.3d 954, 962 (9th Cir.1996) (noting that in 1995 INS took official action to recognize sexual abuse as persecution).
 
 
 5
 Once past persecution is established, the likelihood of present or future persecution is relevant as to whether asylum will be granted as a matter of discretion. See 8 C.F.R. § 208.13(b)(1)(i); Singh v. Ilchert, 63 F.3d 1501, 1510 (9th Cir.1995). The establishment of past persecution creates a rebuttable presumption that the applicant has a well-founded fear of future persecution. See Id. In cases where the past persecution is particularly atrocious, however, a favorable exercise of discretion may be warranted without a showing of the likelihood of future persecution. See Lopez-Galarza, 99 F.3d at 960; see also Acewicz v. INS, 984 F.2d 1056, 1062 (1993).
 
 I. Background
 
 6
 De Las Alas testified that in April of 1985 a group of armed men who identified themselves as members of the New People's Army ("NPA") came to her parents home in Batangas while De Las Alas was there. She testified that the men demanded money from the produce of the farm to support their cause; the men stated they would be back to collect the money during the harvest season. The farm's crops were subsequently destroyed in a typhoon that year and the rebels did not return.
 
 
 7
 Several years later in July of 1990, De Las Alas, while working in Manila, won a car raffle conducted by a nationwide newspaper publisher. She subsequently sold the car and placed the money in the bank. On October 31, 1990, while visiting her parents home in Batangas, four men arrived. Two, who were armed, identified themselves as NPA members and told De Las Alas that they had heard of her winning the car raffle and that she had sold the car. They asked her to give them 100,000 pesos as a contribution to their cause. She testified the men told her about their political ideologies and that they were aware of her support of anticommunist organizations. Because they were armed, De Las Alas stated she did not discuss her political views and promised them she would give them the money in February of 1991 when her treasury bills matured.
 
 
 8
 De Las Alas returned to Manila and in February of 1991 she received a phone call at her work place from Ka Ronnie, one of the NPA rebels who had been at her parents' home in Batangas. After he demanded the money, De Las Alas told him to pick up the money at her work place in several days. After the call, De Las Alas told her employer about the incident and the employer suggested she take a leave of absence until a new position opened in Cebu City. De Las Alas spent the next year staying at a friend's house in Manila and living on her savings. In March of 1992, while De Las Alas was alone at her friend's house, two armed rebels forced their way into the house and asked her why she refused to give them money when she was continuing to support pro-democratic organizations. They dragged her into one of the rooms and raped her, telling her that this is what she gets for refusing to support their cause. Before they left, they told her that she would learn a lesson not to oppose their organization.
 
 
 9
 De Las Alas subsequently moved to her friend's godparents house in Bulacan where she stayed for four months. Thereafter she stayed in a rehabilitation center in Quezon City for about three months, telling her friend not to tell anyone what had happened. She was afraid the incident would be published in the newspaper and the whole nation would know about it.
 
 
 10
 De Las Alas left the Philippines to come to the United States in September of 1992. De Las Alas had obtained a visa shortly after the assault by submitting false documentation indicating she was married.
 
 
 11
 On appeal the BIA concluded that De Las Alas had failed to provide sufficient plausible evidence of persecution. The BIA further concluded that even if it were to assume that De Las Alas had suffered persecution by the NPA, she had not shown it was on account of one of the five prohibited grounds.
 
 II. The BIA's Credibility Determination
 
 12
 The BIA's conclusion that De Las Alas failed to establish past persecution was in fact based on its adverse credibility determination and we therefore review it as such.[1] The BIA cited the following reasons for rejecting De Las Alas' testimony: (1) she failed to mention the rape in her 1992 or 1994 applications; (2) she offered no corroborative evidence to support her claim that she was treated by a physician after the rape or stayed in a rehabilitation center for three months; and (3) she provided false documentation to obtain her visa.
 
 
 13
 The BIA's first reason, her failure to mention the rape in her prior applications, is based on an inaccurate reading of the record. While De Las Alas did not specifically mention the rape in her 1992 application, she stated in her 1994 application that she was "abused" and her being a "person and a woman were both violated." She further mentions in her 1994 application that for the past year and a half she tried to deny that she was a victim and states she has been urged to open up but it is difficult for her to do so. Accordingly, we conclude that the BIA's first ground for the adverse credibility finding is not supported by substantial evidence. See Lopez-Reyes v. INS, 79 F.3d 908, 910 (9th Cir.1996) (applicant's testimony is not per se lacking in credibility because it includes details not set forth in asylum application); see also Osorio v. INS, 99 F.3d 928, 932 (9th Cir.1996) (BIA cannot reject applicant's credibility without first examining what seems to be a plausible explanation for any perceived inconsistencies).
 
 
 14
 The BIA's second reason, that De Las Alas failed to provide corroborative evidence regarding the rape and her subsequent treatment, is not a valid ground upon which to base an adverse credibility finding. See Lopez-Reyes, 79 F.3d at 912.
 
 
 15
 The BIA's third ground for the adverse credibility finding, that she provided false documents in order to receive a visa to come to the United States, is likewise inadequate. De Las Alas' representation to embassy officials that she was married was wholly consistent with her persecution claim; she did so in order to leave the Philippines and escape her persecutors. See Turcios v. INS, 821 F.2d 1396, 1401 (9th Cir.1987).
 
 III. Political Opinion
 
 16
 We also reject the BIA's alternative holding that De Las Alas failed to establish that the alleged persecution was on account of her political opinion.
 
 
 17
 De Las Alas testified that the NPA explicitly told her they were aware of her support of pro-democratic organizations and that they assaulted her as punishment for her refusal to support their cause. This evidence was sufficient to establish that the persecutors had De Las Alas' political opinion "in mind in undertaking the persecution." See Canas-Segovia, 970 F.3d at 600; see also Singh, 63 F.3d at 1508 (persecutory conduct may have more than one motive as long as one of the motives is one of the statutorily enumerated grounds).
 
 IV. Conclusion
 
 18
 In the absence of substantial evidence supporting the BIA's finding of adverse credibility, or its alternate determination that any alleged persecution was on account of De Las Alas' political opinion, we grant the petition for review. If credible, the sexual abuse experienced by De Las Alas constitutes past persecution making her eligible for asylum as a matter of discretion. Accordingly, we remand to the BIA for further proceedings consistent with this memorandum disposition. See Lopez-Galarza, 99 F.3d at 963; Lopez-Reyes, 79 F.3d at 912.
 
 
 19
 PETITION FOR REVIEW GRANTED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. See Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although the BIA stated that neither it nor the IJ's decision was based on an adverse credibility determination, its opinion indicates otherwise. The BIA specifically agreed with the observations made by the IJ in his written decision regarding the "threshold question" of "credibility" and doubted her testimony regarding the rape because she failed to provide corroborative evidence. See Lopez-Reyes v. INS, 79 F.3d 908, 912 (9th Cir.1996) (noting that unrefuted and credible testimony is sufficient and does not require corroborating documentation)