**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MEHERET GETAHUN,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-2223

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A74-290-637)

Submitted: February 23, 1999

Decided: May 26, 1999

Before NIEMEYER, HAMILTON, and MOTZ, Circuit Judges.

_____

Petition denied by unpublished per curiam opinion.

_____

**COUNSEL**

Lynda V. Rice, CAROLYN C. EAGLIN & ASSOCIATES, Alexan-
dria, Virginia; Arthur D. Wright, III, PAYNE & WRIGHT, Washing-
ton, D.C., for Petitioner. Frank W. Hunger, Assistant Attorney
General, Allen W. Hausman, Senior Litigation Counsel, James A.
Hunolt, Office of Immigration Litigation, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Meheret Getahun petitions this court for review of the order of the Board of Immigration Appeals (Board), which affirmed the immigration judge's (IJ) decision to deny Getahun's request for asylum in the United States and her request for withholding of deportation. We deny the petition for review.

Getahun, a 32-year-old native and citizen of Ethiopia, entered the United States in San Francisco, California, on February 5, 1993, as a non-immigrant visitor for pleasure with permission to stay until May 5, 1993. Her authorized stay was extended to November 5, 1993. On April 1, 1996, deportation proceedings were commenced against Getahun because she had overstayed her visa. She had submitted an asylum application in October 1995. At her deportation hearing, Getahun admitted that she had overstayed her visa and conceded her deportability. She requested asylum, withholding of deportation, and voluntary departure.

Getahun testified that in 1980, while Ethiopia was ruled by the regime of President Mengistu Haile-Miriam, she joined the Ethiopian People's Revolutionary Party (EPRP). As a member, she distributed pamphlets and participated in civil unrest. Getahun testified that as a result of her EPRP membership, she was imprisoned from September 1984 to December 1984. While in prison, she was beaten, denied visitors and food, and psychologically harassed.

Following her release, Getahun continued her membership in EPRP and participated in a demonstration against the Mengistu government in May 1989. The Mengistu army dispersed the demonstration, killing some of the demonstrators and imprisoning others, including Getahun. While imprisoned, Getahun was raped, denied food, and beaten with an electrical wire. She was released in August 1989.

2

In September 1989, Getahun married a man who held a job with the Mengistu government and was a member of Mengistu's political party, the Worker's Party of Ethiopia (WPE). Getahun stated that she believed her husband would protect her from harassment and torture.

In May 1991, the Mengistu government was overthrown, and the Transitional Government of Ethiopia (TGE) was established. In June 1992, Getahun and her husband joined the All-Amhara People's Organization (AAPO), because the TGE was persecuting ethnic Amharas. Getahun testified that in 1992, she was arrested, detained, interrogated, and imprisoned for a week because of her membership and activities in the AAPO. Getahun's husband was arrested and killed by the government in September 1994, due to his AAPO membership and activity. Getahun also testified that her father had been imprisoned due to his membership in the AAPO and that he is currently hiding from the government in order to avoid persecution.

Noting a number of inconsistencies, vague areas, and implausibilities in Getahun's testimony, the absence of evidence or documents to corroborate her testimony and the failure to show such were unavailable, and Getahun's seemingly defiant demeanor, the IJ found that Getahun was not a credible witness. The IJ further stated that Getahun did not appear to be forthright, her testimony was constricted and limited to the bare minimum in her responses, and her testimony was vague and evasive. Due to these findings, the IJ stated that she could not credit Getahun's testimony. Thus, the IJ concluded that Getahun failed to meet her burden of establishing that she should be granted asylum and that she also failed to meet the even greater burdens of showing past persecution on account of race, religion, nationality, membership in a particular social group or political opinion, or a clear probability of future persecution. The IJ denied Getahun's application for asylum, but afforded her the relief of voluntary departure.

Getahun appealed this decision to the Board of Immigration Appeals. The Board, finding no convincing reason to disturb the credibility determination of the IJ, upheld the IJ's decision. Getahun filed a timely petition for review in this court, asserting that the Board abused its discretion in affirming the IJ's decision and that the Board should have reversed the IJ's decision and granted asylum to Getahun.

3

To be eligible for asylum, an alien must show persecution or a well-founded fear of persecution in his native country on account of race, religion, nationality, membership in a social group, or political opinion. See 8 U.S.C.A. §§ 1101(a)(42)(A), 1158(a) (West 1970 & Supp. 1998). A well-founded fear of persecution is established if a reasonable person in the circumstances would fear persecution on one of the five enumerated bases. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992) (citing M.A. v. U.S. INS, 899 F.2d 304, 311 (4th Cir. 1990) (en banc)).

Corroborative, documentary evidence is not necessary for the asylum applicant to sustain her burden of proof where the applicant's testimony is sufficiently consistent, specific, and credible. See Matter of Mogharrabi, 19 I. & N. Dec. 439, 444-45 (BIA 1987). We accord great weight to credibility determinations by the immigration judge and the Board of Immigration Appeals, provided the determination is supported by "specific, cogent reason[s]." Figeroa v. U.S. INS, 886 F.2d 76, 78-79 (4th Cir. 1989) (quoting Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir. 1987)). The IJ and the Board expressed a number of reasons to question Getahun's credibility. For example, in her asylum application, Getahun stated that she lived in Washington, D.C., from the time of her arrival in the United States, but she testified that she initially stayed with her brother in California. Getahun testified that she first learned of her husband's death from a telephone call from her brother, who heard from their mother. She then produced a letter from her mother informing her of her husband's death. Getahun testified that she received the letter in 1995, but the date on the letter is June 6, 1996. Getahun attempted to explain the date by stating that her mother wrote the letter in a hurry, and later, that someone else wrote the letter, because her mother is illiterate. Notably, this letter, which explained the circumstances of Getahun's husband's death, was written while her asylum application was pending.

Getahun was also unable to explain why she joined the EPRP, and she was unable to explain when or how she met her husband or how they became engaged. She first testified that she met her husband after her release from prison, and then testified that she had known him before. The IJ found incredible her testimony that, within a few weeks of being released from prison, she met her husband, agreed to marry him, and planned a wedding party for fifty people.

4

In light of these inconsistencies and the lack of explanation, we agree with the Board that the IJ properly required some corroborative, documentary evidence to sustain Getahun's burden of proof. See Mogharrabi, 19 I. & N. Dec. at 444. Absent that, we find that the immigration judge and the Board provided "specific, cogent reason[s]" for discrediting Getahun's testimony. See Figeroa, 886 F.2d at 78-79 (quoting Turcios, 821 F.2d at 1399). Having discredited Getahun's testimony, we find that substantial evidence supports the Board's conclusion that Getahun failed to show past persecution. Additionally, Getahun failed to present evidence of a clear probability that she would be persecuted by the current government in Ethiopia on account of her race, religion, membership in a social group, nationality, or political opinion. Accordingly, we uphold the Board's finding that Getahun failed to show a well-founded fear of future persecution. See M.A., 899 F.2d at 315.

Because she failed to sustain her burden of proving that the evidence in the record compels a reversal of the Board's decision, see INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992), we deny Getahun's petition for review of the decision of the Board. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

PETITION DENIED

5