

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-21-2003

# Mekshi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket 02-3339

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Mekshi v. Atty Gen USA" (2003). *2003 Decisions.* Paper 636.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/636

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3339

CLIRIM MEKSHI; JOLANDA MEKSHI;
FLORIAN MEKSHI; FRIDA MEKSHI,
                                              Petitioners

v.

JOHN ASHCROFT, U.S. ATTORNEY GENERAL;
IMMIGRATION & NATURALIZATION SERVICE

APPEAL FROM THE UNITED STATES IMMIGRATION
AND NATURALIZATION SERVICE
Agency Nos. A73-584-072, A73-584-073
A73-584-074 and A73-584-075

Submitted Under Third Circuit LAR 34.1(a)
April 11, 2003

Before: BARRY, ROSENN, <u>Circuit Judges</u>, and POLLAK,[*] <u>District Judge</u>

(Opinion Filed: April 21, 2003)

OPINION

BARRY, <u>Circuit Judge</u>

_____

[*] The Honorable Louis H. Pollak, Senior District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Clirim, Jolanda, Florian and Frida Mekshi petition for review of an order of the Board of Immigration Appeals (BIA) denying Clirim Mekshi's application for asylum and ordering him removed from the United States. Petitioner Clirim Mekshi argues that the BIA erred in reversing the decision of the Immigration Judge (IJ) by failing to defer to the IJ's credibility findings.[1] We will deny the petition for review.

In order to be eligible for asylum, a petitioner must demonstrate "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Petitioner contends that he was persecuted in Albania for his activities as a journalist and political propagandist critical, first, of the communist government and, then, of the government that replaced it. He claims that after speaking at a demonstration in March of 1991, he was arrested and detained for several days, during which time he was beaten and denied food. On September 8, 1992, he was again arrested, and was eventually sentenced to four months imprisonment for his criticism of the Albanian president, Sali Berisha. He was allegedly beaten repeatedly while in prison.

On August 23, 1993, petitioner criticized President Berisha in a speech he gave at a human rights conference. Two days later, he was arrested and was held for several hours during which time the police beat him and warned him not to contradict the policies of President Berisha or of the President's party. On November 3, 1994, he was arrested again,

--------

[1] Because the applications of Jolanda, Florian and Frida are contingent on Clirim's, the Court will refer to petitioner in the singular, meaning Clirim, throughout this opinion.

this time for giving an interview to an Italian newspaper in which he criticized one of President Berisha's proposals. He was detained for five days during which time he was beaten and threatened by the police.

In September of 1995, he continues, he was again arrested and held for three days after criticizing President Berisha at a conference. Finally, on October 9, 1996, he was arrested for having submitted an article critical of the President for publication in a major newspaper. On October 14, 1996, petitioner received a letter indicating that a hearing would be held on November 11th "in (1) the penal case against him for the political attack (2) against the President of the Republic by calumny." Petitioner claims that it was only after receiving the letter that he decided to leave Albania, in fear for his life.

On October 20th and 24th of 1997, the IJ held a hearing on petitioner's application for asylum. The hearing extended over two days in large part because of petitioner's failure to testify succinctly and in detail about his experiences in Albania. The IJ did not believe that petitioner's problems stemmed from the interpreter; still, "[b]y happenstance, not by design," a different interpreter was used for the second day of testimony. Petitioner's problems continued with the new interpreter.

The IJ repeatedly admonished petitioner to explain in detail the criticisms he made that triggered the persecution he allegedly suffered. This he was unable to do. The IJ bemoaned the fact that this hindered his ability to find credible petitioner's claim that he was "a political activist who made dissident political statements and speeches." The IJ noted that he would expect a college graduate who was a journalist and political activist,

3

employed by his party as a propagandist, to be able to relate what he said on a given occasion. On the second day of testimony, the clearly exasperated IJ warned petitioner as follows: "I mean, after all, sir, you tell us that you were a political writer and a propagandist. I haven't seen any evidence of it so far in this case. There is not one occasion yet when you have acted as I would expect a political propagandist [to act] and state clearly and in detail what the criticisms were that you made that got you in trouble." Despite the problems with petitioner's testimony, the IJ granted his application for asylum, finding that the "essential tenets" of his testimony were "reasonably worthy of belief" because of the "plausible context for [his] subjective claim supplied by the objective evidence." The IJ found that the objective evidence, which included reports prepared by the State Department and by Amnesty International, established "that there have been abuses during the Berisha regime that have especially impacted supporters of the opposition and journalists." The IJ concluded that "Whatever questions may arise by the [petitioner's] testimony, this plausible context makes his story specific, detailed, coherent, and reasonably worthy of belief." The IJ stated in his opinion that he was "willing to attribute the respondent's inability to communicate concisely to a cultural gap that exists between him and his adjudicators in the United States." The Immigration and Naturalization Service (INS) appealed the IJ's decision to the BIA, which reversed.

The BIA was not required to defer to the IJ's findings. In appeals filed before September 25, 2002, the BIA has the authority to issue a discretionary decision independent from that of the IJ "in accord with [its] mandate to 'exercise such discretion

4

and authority conferred upon the Attorney General as is appropriate and necessary for the disposition of the case.'"[2] Matter of Burbano, 20 I. & N. Dec. 872, 873 (BIA 1994)(quoting 8 C.F.R. § 3.1(d)(1) (1994)).  Stated another way, the BIA may review the IJ's findings de novo.  See Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001);  In re A-S, 21 I. & N Dec. 1106, 1109 (1998).

That said, the BIA has "recognize[d] that the immigration judge who presides over a case has certain observational advantages due to his or her presence at the exclusion or deportation hearing. For example, the Board ordinarily gives significant weight to the determinations of the immigration judge regarding the credibility of witnesses at the hearing." Matter of Burbano, 20 I. & N. Dec. at 874.  If the IJ's findings are not supported by the record, however, the BIA "may not accord deference" to them.  In re A-S, 21 I. & N Dec. at 1109.

The question for us, then, is whether the BIA's finding that the petitioner's testimony was not credible was supported by substantial evidence in the record.  See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).  Substantial evidence "'is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Senathirajah v. INS, 157 F.3d 210, 216 (3d Cir. 1998)(quoting Turcios v. INS, 821 F.2d 1396, 1398 (9th Cir. 1987).  In evaluating the BIA's credibility

---

[2] In appeals filed after September 25, 2002, the BIA is prohibited from reviewing the IJ's findings de novo, that is, from engaging in its own fact finding.  See 8 C.F.R. § 3.1(d)(3)(i) (2002).

5

finding, we evaluate the validity of the reasons given for that finding.  Id.

In this case, the BIA based its credibility determination on three factors.  The first was that petitioner "was unable to testify in a clear and cogent manner regarding his alleged political and journalistic activities in Albania."  The BIA found that it "strain[ed] credulity that [petitioner], a college-educated journalist who covered politics, spoke at conferences regarding human rights in Albania, and who also gave interviews, would not be able to articulate the goals and achievements of his political organization and how such goals differed from those of other political groups."  The second and third factors noted by the BIA were that the three articles submitted by petitioner to corroborate his claim did not bear his name and that he testified that none of the articles addressed political issues in Albania, when in fact all three of them did.

There is substantial evidence in the record to support the BIA's determination that petitioner's testimony was significantly less clear and cogent than would be expected of a college-educated journalist and political activist.  Even the most cursory reading of the transcript supports that conclusion.  For example, when asked why the Democratic Alliance, the political party of which petitioner was a member, opposed Sali Berisha's Democratic Party, he responded that "[t]he Democratic Alliance was in opposition because they, the Democratic Party held the power, all the power."  When asked whether that summarized all that he knew about the two parties, he responded in the affirmative; when asked whether his lack of knowledge stemmed from the fact that he was not actually

6

involved in politics he responded that he "finished as an economist in school. I took up correspond or newspaperman because I liked – I liked that job. I don't claim to be in a higher category as a newspaperman."

To give another example, on the second day of testimony, the IJ summarized a portion of petitioner's testimony as follows: "He removed somebody, he was the head of the judiciary system, he was a deputy in the Democratic Party, the president put him there, he pulled him out of parliament, he was immune then he wanted to put him in jail. He changed the regulations of the party and then Fatos Nano." The IJ concluded that petitioner's testimony consisted of bits and pieces which made "absolutely no sense."

The record also supports the BIA's finding that none of the three articles submitted by petitioner bore his name, which lessens their value as corroborative evidence, and that he testified that the articles had "nothing to do with politics," when in fact they did. In conclusion, the reasons given by the BIA for finding petitioner's story not credible were valid and there was substantial evidence in the record to support its denial of petitioner's asylum application.

The petition for review will be denied.


TO THE CLERK OF COURT:

Kindly file the foregoing opinion.

7

_Maryanne Trump Barry_

Circuit Judge