

Opinions of the United
States Court of Appeals
for the Third Circuit

10-28-2004

# Singh v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2769

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Singh v. Atty Gen USA" (2004). *2004 Decisions.* Paper 188.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/188

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 03-2769
_____

JAGTAR SINGH

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES

Respondent

_____

On Petition for Review of an Order of the
Department of Justice
Board of Immigration Appeals
(BIA No. A71 499 443)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 26, 2004

BEFORE:  NYGAARD, AMBRO and VAN ANTWERPEN, Circuit Judges.

(Filed October 28, 2004)
_____

OPINION
_____

VAN ANTWERPEN, Circuit Judge.

Jagtar Singh ("Petitioner") seeks review of a final order of the Board of

Immigration Appeals ("BIA") affirming the denial by the Immigration Judge ("IJ") of his

applications for asylum and withholding from removal.[1]  The IJ's denial was based upon an adverse credibility determination.  The BIA affirmed on that ground, finding additionally that changed conditions in India would alternatively deny relief.  We have appellate jurisdiction pursuant to 8 U.S.C. § 1252(a)(1) and will deny the petition.

I.

Because we write solely for the benefit of the parties, we state the facts only as they pertain to our analysis.  Petitioner, a citizen of India, entered the United States on March 10, 1992 without inspection.  On August 7, 1992, he submitted an asylum application stating he was a member of the All India Sikh Student Federation ("AISSF") in India, that he was responsible for new member recruitment, and that these activities had prompted the Indian police to arrest and detain him on January 30, 1992.  He stated he was afraid to return to India because the police were still looking for him and he would be arrested, tortured, and perhaps even killed if he returned.  Petitioner supported his application with several affidavits.  Three affidavits were from friends of Petitioner who had remained in India.  Each attested that Petitioner was an active member of the AISSF and that he was arrested on January 30, 1992.  Additional affidavits from friends and family living in the United States attested to the difficulties Petitioner would face as a Sikh were he to return to India.

At his merits hearing on May 31, 2001, Petitioner testified that he was born in

---

[1]  Petitioner did not appeal the IJ's denial of protection under the Convention Against Torture.

India, that he was a Sikh, and that, in India, he had owned his own farm, was married, and had two children. Petitioner testified that his wife and two children stayed in India when he left, and that he was now divorced. He testified that he joined the AISSF in 1987, that he recruited new members and organized meetings, and that, as a result, he had been arrested six times in those five years. He further testified that he had been abused during one of these arrests. He showed a scar on his leg and introduced a letter from a physician stating the wound was the result of abuse. Petitioner also testified that he was forced to go underground beginning in 1988, although between 1988 and 1992 he was still arrested four times as a result of political activities such as participating in a public procession in January, 1990.

At the merits hearing, Petitioner was asked about discrepancies between his testimony and documents concerning his arrests, his application for asylum, his supporting affidavits, his scar, and his subsequent medical treatment. In response, as to his arrests, Petitioner testified that his lawyer mistakenly omitted five arrests from his asylum application in 1992, but Petitioner did not explain why his three affidavits from Indian friends all mentioned only the January 30, 1992 arrest that appeared in Petitioner's asylum application. As to his scar, Petitioner testified that, although his 1981 passport identified the presence of a scar on his leg, the scar was nonetheless the result of abuse because Indian police beat the existing scar and made it worse. As to other discrepancies observed by the IJ, Petitioner could not explain his lack of documentation corroborating

3

his divorce, nor could Petitioner explain his lack of documentation with respect to his membership in, or activities on behalf of, AISSF.

Petitioner did not call as witnesses any of his friends or family members living in America who had provided additional supporting affidavits for his asylum application. He only called himself as a witness.

At the conclusion of Petitioner's merits hearing, the IJ denied the applications for asylum, withholding of removal, and Convention Against Torture protection and granted Petitioner his alternative request for voluntary departure. The IJ found Petitioner was not credible because his testimony was contradicted by Petitioner's documentation, not corroborated by that documentation, and that, as a result, Petitioner had failed to meet his burden of proof. Appellant timely filed a petition for review with the BIA. On November 7, 2002, the BIA summarily affirmed the IJ's decision on the ground that Petitioner lacked credibility due to the inconsistencies identified in the IJ's decision. The BIA alternatively found that Petitioner would have been ineligible for relief in light of changed conditions in India. The BIA dismissed the appeal.

II.

When the BIA defers to the findings and decision of an IJ, we look to the reasoning of the IJ in our review of that decision. *Dia v. Ashcroft*, 353 F.3d 228, 244 (3d Cir. 2003) (en banc). Thus, we review the IJ's credibility determination to determine whether it is supported by substantial evidence in the record. *See INS v. Elias-Zacarias*,

4

502 U.S. 478, 481 (1992); *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

"'Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Senathirajah v. INS*, 157 F.3d 210, 216 (3d Cir. 1998) (quoting *Turcios v. INS*, 821 F.2d 1396, 1398 (9th Cir. 1987)). An adverse credibility determination must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Elias-Zacarias*, 502 U.S. at 481-484. Here, substantial evidence supports the IJ's adverse credibility determination.

### III.

Given the above standard, we are unable to say that a reasonable fact finder would have been compelled to conclude to the contrary of the IJ's decision. The IJ reasonably concluded that Petitioner's testimony was incredible in light of several material inconsistencies that, together, were fatal to Petitioner's claims. "Aliens have the burden of supporting their asylum claims through credible testimony." *Gao*, 299 F.3d at 272.[2] Here, the IJ's findings were based on material discrepancies between Petitioner's testimony, his asylum application, affidavits, and other supporting documents. The IJ found that several of these discrepancies went to the heart of Petitioner's application. In making these findings, the IJ appropriately relied upon the record. First, Petitioner

---

[2] Petitioner bears the burden of establishing eligibility for relief from removal. *See* 8 C.F.R. § 208.13 (asylum); *Mendoza v. U.S. Atty. Gen.*, 327 F.3d 1283, 1287 (3d Cir. 2003) (withholding of removal).

5

testified he was a member of the AISSF in India for almost five years, yet he could produce no document to corroborate this testimony. Petitioner could not explain why he lacked such corroborating evidence, even though he testified to having several lines of communication open to India, through friends and family still living there, including his ex-wife, with whom Petitioner testified he communicated frequently.

Second, while Petitioner testified he had been arrested six times during those five years for AISSF related activities, this testimony was contradicted in several ways. Among them, his application for asylum, and three of the affidavits supporting that application, stated that Petitioner was arrested only once, on January 30, 1992, while none of Petitioner's other affidavits or documents supported Petitioner's testimony of multiple arrests. As for his asylum application, Petitioner testified that the five omitted arrests were his lawyer's mistake. Yet even were that so, it would not explain the unanimity of the three affidavits from India on the point, which all stated Petitioner was arrested only the one time, on January 30, 1992. Petitioner's testimony about these other arrests was further undermined because while he testified that he went into underground hiding for safety in the period 1988 to 1992, he also testified that he was arrested four times in those same years for participating in public AISSF events.

Third, Petitioner's testimony that he was beaten during one of these arrests in the years between 1987 and 1992 was undermined by his own passport, dated 1981, which already identified the scar Petitioner claims is evidence of abuse that occurred years later.

6

It was reasonable for the IJ to find incredible Petitioner's claim that Indian police beat him only in the exact place of this one existing scar, especially given that Petitioner's documentary evidence of medical treatment was created in 2000, and not contemporaneously with treatment Petitioner claimed to receive for the injury in 1992.

Based upon these factors, the IJ was well within the bounds of his discretion to find Petitioner lacked credibility. A review of the IJ's analysis and reasoning confirms that these discrepancies go to the heart of Petitioner's claim of whether, as a Sikh, he suffered political prosecution. The IJ provided concrete, specific, and cogent reasons for his adverse credibility findings in the critical subject areas of Petitioner's alleged arrests and injury arising from his political activities, based upon careful consideration of Petitioner's testimony, his asylum application, his accompanying affidavits, and his supporting documentation. *See Senathirajah*, 157 F.3d at 216 (an IJ must provide "specific, cogent" reasons for credibility determinations based upon valid grounds). As such, the IJ's determination that Petitioner was not credible is therefore supported by substantial evidence. *See Abdulrahman*, 330 F.3d at 597 (affording substantial deference to a finding grounded in evidence in the record).

Because Petitioner did not testify credibly, he failed to carry his burden of proof and establish eligibility for asylum or withholding from removal. As such, Petitioner's lack of credibility is an adequate ground for denying the petition, and we need not reach the BIA's alternative holding that, even were Petitioner credible, he would be ineligible

7

for relief due to changed conditions in India. *See Dia,* 353 F.3d at 247 ("An alien's credibility, by itself, may satisfy his burden, or doom his claim.").[3]

Therefore, for the reasons set forth above, we will deny the Petition.

---

[3] For this reason, we do not reach Petitioner's contention that the BIA's alternative ground for denying relief, based upon a 1999 country report provided by the State Department, was a violation of due process.