**ZHU QUING LI, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 06–3517.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Oct. 22, 2007.

Filed: Oct. 24, 2007.

Michael A.O. Brown, Law Office of Michael Brown, New York, NY, for Petitioner.

Carl H. McIntyre, Jr., Nancy E. Friedman, David C. Kelly, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: FISHER, ALDISERT AND GREENBERG, Circuit Judges.

OPINION

ALDISERT, Circuit Judge.

Zhu Quing Li is a native and citizen of China who entered the United States in 2001 without proper documentation. He filed a timely application for asylum and withholding of removal on June 22, 2002. Li based his asylum claim "on his alleged past persecution and fear of continuous persecution in China because of his violation of the family planning policy." Petitioner's Br. at 9. The Immigration Judge ("IJ") denied his asylum application and the Board of Immigration Appeals ("BIA") affirmed. We will deny the petition for review.

## I.

On December 19, 2002, the IJ denied Li's application for asylum, withholding of removal, and protection under the Convention Against Torture. In the order denying relief, the IJ stated that there was no application pending before the Court because Li had not presented the appropriate number of copies of his application. Li filed an appeal with the BIA, and the BIA remanded to the IJ for further proceedings. The IJ then conducted a hearing on the merits in which it denied relief because it found that Li was not credible and was inconsistent. Li filed an appeal with the BIA. The BIA noted that, although the IJ was unnecessarily combative toward Li's attorney at a master calendar hearing, the IJ nonetheless conducted himself in a professional manner during the merits hearing. The BIA then adopted and affirmed the IJ's decision.

## II.

An alien is eligible for a discretionary grant of asylum under the Immigration and Nationality Act ("INA") § 208 if he proves that he is a "refugee." 8 U.S.C.

§ 1158(b)(1)(A). A "refugee" is an alien who is "unable or unwilling" to return to his or her country of origin "because of persecution or well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). In response to concern that the INA did not protect asylum-seekers subject to China's controversial one-child policy, Congress amended the statutory definition of a "refugee" in 1996 to include any person who has a well-founded fear that he or she will be forced to abort a pregnancy or undergo involuntary sterilization. *Id.* § 1101(a)(42)(B).

To establish a well-founded fear of future persecution, an applicant must first demonstrate a subjective fear of persecution through credible testimony that his fear is genuine. *Zubeda v. Ashcroft,* 333 F.3d 463, 469 (3d Cir.2003). Second, the applicant must show that his fear is "objectively reasonable." *Id.*

### III.

Ordinarily, this Court only reviews the decision of the BIA, not that of the immigration judge. *Abdulai v. Ashcroft,* 239 F.3d 542, 548–549 (3d Cir.2001). We have recognized, however, that when the BIA both adopts the findings of the immigration judge and discusses some of the bases for the immigration judge's decision, we have authority to review the decisions of both the immigration judge and the BIA. *He Chun Chen v. Ashcroft,* 376 F.3d 215, 222 (3d Cir.2004); *Abdulai,* 239 F.3d at 549 n. 2 ("When the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate.").

This Court must uphold the immigration judge's credibility determination if there is substantial evidence in the record to support it. *See Gao v. Ashcroft,* 299 F.3d 266, 272 (3d Cir.2002). Under this standard, the immigration judge's adverse credibility finding will withstand review unless "any reasonable adjudicator would be compelled to conclude to the contrary." INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B); *see also INS v. Elias–Zacarias,* 502 U.S. 478, 483–484, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Put another way, "[i]f a reasonable fact finder could make a particular finding based on the administrative record, then the finding is supported by substantial evidence." *Dia v. Ashcroft,* 353 F.3d 228, 249 (3d Cir.2003).

An immigration judge's finding that an applicant for asylum is not credible will be afforded substantial deference if the findings are supported by "specific cogent reasons." *Gao,* 299 F.3d at 276 (citing *Turcios v. INS,* 821 F.2d 1396, 1399 (9th Cir. 1987)). The reasons cited by the immigration judge "must bear a legitimate nexus to the finding." *Balasubramanrim v. INS,* 143 F.3d 157, 162 (3d Cir.1998). Furthermore, an adverse credibility finding "based on speculation or conjecture, rather than evidence on the record," cannot be upheld upon review. *Gao,* 299 F.3d at 272. When an immigration judge bases an adverse credibility finding on the implausibility of aspects of a claim, "such a conclusion will be properly grounded in the record only if it is made against the background of the general country conditions." *Dia,* 353 F.3d at 249.

### IV.

We have reviewed the record in light of the foregoing precepts and conclude that Li has not met his burden to persuade us to reverse the IJ's credibility determination. We agree with the BIA that some of the discrepancies pointed out by the IJ are

minor or may have an explanation.[1] Nonetheless, we do find that there is substantial evidence to uphold the IJ's credibility determination. In particular, because Li's claim is based on his wife's forced sterilization after the unauthorized birth of their second child, the events leading up to, and immediately after, the sterilization are central to his claim. As the IJ pointed out, there are several inconsistencies in Li's testimony surrounding those events.

Li's testimony regarding the events surrounding the registration of his second child with village authorities was inconsistent. Li first testified that he had trouble registering his son (his second child) but was permitted to do so after paying a fine. On cross-examination, Li testified that when he paid the fine, he promised the authorities that *he* would come in to be sterilized after his son was a month old. Upon further questioning, Li testified that he told the authorities *his wife* would come back for the sterilization. He then tried to reconcile the two statements by testifying that he promised authorities that *either he or his wife* would return. Li did not mention that he or his wife would return for sterilization in his affidavit or his direct testimony, and under questioning responded that he had omitted the fact because of nervousness and his desire to provide simple answers.

Li's testimony concerning China's family planning policy was also inconsistent. He first testified that, in China, any couple giving birth to a daughter may have a second child. Upon further questioning, Li modified that statement and alleged that after having a daughter, couples must wait four to five years before applying to have another child, and that not all applications are granted. He said that he and his wife did not apply for permission for their second child, notwithstanding the passing of the requisite amount of time. Instead, his wife had her IUD removed by a doctor approximately four years after their daughter was born. When asked why they did not request permission to have a second child, Li said that they wanted to have the child sooner.

In addition, Li testified that, upon hearing that his wife had been sterilized, he became very angry and confronted village officials in their office. Li testified that the officials wanted a policeman to arrest him. When asked on cross-examination how he escaped from the officials in their own office, Li testified that he chose one of several exit doors and was able to escape. Li testified that he had not been to the office before. When pressed as to how he managed to elude the officials in their own office, Li testified that in fact he had been there before, a long time ago, and asserted

---

1. For example, the government concedes that some of the inconsistencies raised by the IJ, including Li's testimony as to his exact wedding date and the exact timing of his wife's pregnancies, are minor and would not be an adequate basis for an adverse credibility finding in this case. Respondent's Br. at 18 n. 4. In addition, the "extreme nervousness" exhibited by Li, cited by the IJ, app. at 54, may be understandable in light of Li's past experiences with the IJ. At a prior hearing, upon discovering that Li was unable to get his attorney to attend the hearing, the IJ stated: "[S]ince your attorney has refused to accompany you here, since you don't have an application for asylum pending, I'm going to send you back home to China today." *Id.* at 433. At a hearing that Li's attorney attended, the IJ exclaimed to the attorney: "Out, out, out! Out of here! ... Pick up the hearing notice and keep your mouth shut, and don't give me the looks, Counsel, all right? ... Good by[e]! Get lost!" *Id.* at 84. This Court has been concerned with this IJ's conduct on previous occasions. *See Fiadjoe v. Attorney General,* 411 F.3d 135 (3d Cir.2005); *Sukwanputra v. Gonzales,* 434 F.3d 627 (3d Cir.2006).

that he had misunderstood the question when it was previously posed.

The foregoing inconsistent testimony on matters directly relevant to Li's claim supports the IJ's adverse credibility finding. *See Gao*, 299 F.3d at 272. As there is substantial evidence in the record to support the IJ's credibility determination, we must uphold it.

\*    \*    \*    \*    \*    \*

We have considered all the contentions of the parties and conclude that no further discussion is needed. The petition will be denied.