**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SAUL GREGORIO MARTINEZ,
                    *Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,
                    *Respondent.*

No. 04-72975

Agency No.
A70-217-803

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 7, 2007—Pasadena, California

Filed March 3, 2009

Before: Harry Pregerson, John T. Noonan, and
Stephen S. Trott, Circuit Judges.

Opinion by Judge Trott;
Dissent by Judge Pregerson

**COUNSEL**

Kari E. Hong, Law Offices of Helen A. Sklar, Los Angeles, California, for the petitioner.

Arthur L. Rabin, U.S. Department of Justice, Office of Immigration Litigation, Washington D.C., for the respondent.

**OPINION**

TROTT, Circuit Judge:

Saul Martinez, a native of Guatemala, petitions for review of a Board of Immigration Appeals' ("BIA") decision that denied his claims for asylum, withholding of removal, and voluntary departure. In a 2003 decision, this court remanded the matter to the BIA for further proceedings, concluding that it had failed to provide cogent reasons for rejecting Martinez's testimony in support of his application. *Martinez v. I.N.S.*, 72 F. App'x 564 (9th Cir. 2003). In its recent decision, the BIA upheld the Immigration Judge's ("IJ") adverse credibility finding regarding Martinez. Martinez also petitions for review of the BIA's decision that denied his motion to reopen to consider his Convention Against Torture claim.

We have jurisdiction over this timely petition, which we deny on both counts.

**I**

"We review adverse credibility findings under the substantial evidence standard." *Rivera v. Mukasey*, 508 F.3d 1271, 1274 (9th Cir. 2007). "The BIA must have a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief." *Valderrama v. I.N.S.*, 260 F.3d 1083, 1085 (9th Cir. 2001)

(internal quotation marks omitted). Here, because the BIA failed when it first heard this case to provide specific, cogent reasons to support its initial adverse credibility determination, we remanded to give the BIA the opportunity to provide reasons for its conclusions. *See Garrovillas v. I.N.S.*, 156 F.3d 1010, 1015-16 (9th Cir. 1998) (finding that the BIA's decision was not supported by substantial evidence and remanding to the BIA with instructions to provide specific reasons). The BIA has followed our instructions, and we now review its decision.

## II

The facts pertaining to Martinez's credibility — or the lack thereof — are striking. In his initial Request for Asylum in the United States dated September 21, 1992, he made the following admittedly false representations under penalty of perjury, declaring that "the above and all accompanying documents are true and correct to the best of my knowledge and belief":

> I am seeking Asylum in the US. Because in Guatemala I was threatened by the Gobernment because I was in the University of San Carlos I was Leader of the Students in the University of San Carlos and for this reason the Gobernment persecuted and threatened me, I am afraid to return Guatemala because many of my companions to disappear completely and I can to disappear likewise. I was constantly threatened by the Gobernment and my life was in more danger than the rest of the people of my country. If I didn't leave, I would have been killed.

> The constant conflicts that exist in Guatemala no security for anyone. In my case that I belonged to student groups is very hard to live in Guatemala.

> . . . .

I was in Student Group of The University of San Carlos during the period between 1986 to Nov. 1991. I was active member. My duties were to organized Political Meeting. And organized to the Students.

. . . .

I was threatened by the Gobernment they have gone on various occasions to my house and the University looking for me. because I was Leader of the Students in the University of San Carlos, causing my life to be threatened to death by the Gobernment.

. . . .

I came to the US. in search of protection of my life, I also came in search of a peaceful life without always having to fear for my life, because in Guatemala my life was in danger, I was always persecuted by the Gobernment.

The next step in what turns out to have been a plot to deceive the Immigration and Naturalization Service, the United States Department of Justice, and the Attorney General was to foil the asylum officer assigned to his case. To accomplish this ruse, he appeared in person before the officer three years after his application and testified under oath — again falsely — that he was the victim of persecution "on account of my political opinion." Moreover, he swore before the officer that the content of his initial request was true. The officer's Assessment Report dated November 14, 1995, demonstrates that his hoax was designed to fit neatly into the requirements of our asylum law. The officer's report reads as follows:

Applicant indicated that he is a 31-year-old male native and citizen of Guatemala who entered the

United States on May 14, 1992 at San Ysidro, Ca without inspection.

Applicant fears that he will be killed by the government on account of his *political opinion*.

*Applicant credibly testified* that in January 1991, he became a leader in a student club at San Carlos University. Applicant stated that he began having problems due to his political opinion after participating in Mardi Gras type parades with political overtones. Applicant began receiving threatening phone calls in January 1991 and believed that agents of the government were responsible. Applicant did not stated [sic] a political opinion in response to the phone calls. Applicant stated that the calls persisted through June 1991, when Applicant went to visit his parents in Puerto Barrios. Applicant did not expereince [sic] any problems in Puerto Barrios and stated that it was a remote little town far from Guatemala City. In August 1991, Applicant was chased by a car. Applicant was not harmed, although he believed that the government was responsible. In November 1991, Applicant was again chased by a car and shot at. Applicant was not harmed and believed that the government was trying to scare him. Applicant left Guatemala the next day and traveled through Mexico prior to coming to the United States. Applicant further stated that he has a brother, who is currently living in Guatemala City and not experiencing any problems with the Government. Applicant's family is presently living in Puerto Barrios, and not experiencing problems with the government.

Applicant has been threatened on several occasions on account of his political opinion. Threats alone do not constitute persecution. The Applicant has not established a well-founded fear of future persecu-

tion. It appears that the threats the Applicant suffered were local in nature. The Applicant was able to live in Puerto Barrios, and not experience problems with the government. Applicant's parents are presently living in Puerto Barrios and not experiencing problems. Applicant has not established that the government has the inclination to pursue him. Applicant can relocate.

For the foregoing reasons, Applicant is not eliglible [sic] for asylum in the United States. Assessment is to refer to the Immigration Judge.

(emphasis added).

Three aspects of this report are particularly noteworthy. First, the level of invented detail with which Martinez presented his false claim. Second, his ability to convince an experienced asylum officer that his swindle was credible; and third, Martinez's failure nonetheless to achieve a favorable asylum eligibility recommendation.

Having failed to convince the asylum officer that his phony political persecution story made him eligible for asylum, Martinez simply changed his tune, shed his first yarn, and showed up three months later for a hearing before an IJ, armed with an entirely new ground designed to make him eligible for asylum. No longer had he been a victim of persecution on account of his political opinion. Now, euphemistically calling his bogus initial request "partially incorrect," he averred that he had been persecuted because of his homosexuality.

When confronted at his hearing with his previous story, Martinez conceded that both the elaborate tale he recounted in his initial request and then repeated in person three years later to the asylum officer was a fabrication. He allowed that he had taken an oath to tell the truth to the officer, but that he had lied anyway because his "life was in danger." When

pressed, Martinez admitted that the asylum officer had not
been intimidating and that he had never had any problem dur-
ing the four years he had been in the United States with gov-
ernment officials because of his homosexuality.

The context of Martinez's lies under oath to the asylum
officer was the subject of direct testimony by the officer, none
of which supports the existence of a hostile interview atmo-
sphere which would explain Martinez's adherence to his lies
or his alleged fear of danger. The officer's testimony amply
supports the IJ's disbelief of Martinez's explanation of his
lies. Stating that he specifically recalled Martinez's interview,
the officer said:

> I, I do swear them in also. I think I stated that also,
> you know, as I was sworn today stating that he
> should tell the truth and such. We — I personally
> explain the procedure trying to make him feel as
> comfortable as possible letting them know what the
> next step is in the procedure even prior to getting to
> the interview. After explaining the procedure we go
> ahead and verify the biographical data on the I-589,
> okay, and ask for any other evidence that he may be
> willing to provide at that time. *We assure that the
> interview is very confidential, that nothing will get
> back to Guatemala. That's part of the procedure and
> basically trying to reassure the applicant we're there
> to help them if we can.* So they tell, tell us their com-
> plete story and we go, we go ahead over all the bio-
> graphical information and also the, the testimony on
> the I-589. And we, we start — usually I start by ask-
> ing him the application to tell me the most severe
> incidents that he experienced in Guatemala that com-
> pelled him to come to the United States. I make it
> clear that there are five grounds so there is not just,
> not just one ground that there — I also let them
> know that there is membership in political social —
> political group which is more or less a — member-

ship in a, in a social group, excuse me. Not necessarily in a political group. I do ask whether he's, he's been a member of any groups or organizations, political or otherwise, other than the Catholic church per se. I , I do make it clear that there are five grounds. And we, we get into eliciting information, ascertaining that information for credibility, that's the majority of the interview. Okay. We stress credibility very highly and then upon completion of the interview I, I bring any changes that were made during the interview on the 589 or in testimony, anything that is inconsistent with what, what was explained originally. That is addressed. Upon addressing any inconsistencies we have the applicant sign stating that all the testimony that he has provided on the 589 and also his verbal testimony is true and correct.

(emphasis added).

In a thorough and detailed twenty-three page decision, the IJ arrayed every aspect of the case and evidence before him and then turned to Martinez's credibility. Noting that the burden to demonstrate eligibility rested with the petitioner, the IJ made the following lack of credibility finding:

The Respondent has presented insufficient specific facts as well as concrete and/or credible evidence for the Court to infer that he has been persecuted or has a well-founded fear of persecution in Guatemala on account of his race, his religion, his nationality, his membership in a particular social group or his political opinion. The basis of the Respondent's claim to asylum before this Court was dramatically inconsistent with the claim presented to the INS in 1992 and reaffirmed before an INS asylum officer on November 13, 1995. Although Respondent provides an explanation for the different claims I do not find that explanation to be credible.

In light of the Respondent's intelligence and more than three years time in the Los Angeles area during which time he appears to have freely associated with other gays and to have had no untoward difficulties with governmental authorities Respondent did not acquire the articulate intelligent relaxed demeanor which he exhibited in this Court overnight. Moreover, we have a situation where the Respondent did worse than neglect for whatever reason to refer to his "homosexual" claim in 1992 or 1995, he set forth "student/political" claim which was completely untrue and he knew it was untrue. The Respondent's prior experience does not entitle him to come to the United States and lie to a governmental official to secure benefits under the laws of this country. Based upon this conduct I find that Respondent's present claim of mistreatment due to his homosexuality lacks credibility and, indeed, that Respondent is not a person of good moral character as that term is defined at Section 101(f)(6) of the Act.

. . . .

The Respondent has applied for the privilege of voluntary departure pursuant to Section 244(e) of the Act as it existed prior to April 1, 1997. That section requires an alien to establish that he is a person of good moral character at least five years immediately preceding his application. Good moral character as a defined term in Section 101(f)(6) of the Act bars the finding of good moral character if the alien has given false testimony for the purpose of obtaining any benefit under the Act. In this case, Respondent is unable to establish statutory eligibility as he gave false testimony before an INS asylum officer on November 13, 1995 for the purpose of obtaining asylum in the United States pursuant to Section 208 of the Act.

Accordingly, Respondent's application for voluntary departure is denied on statutory grounds.

The BIA determined in its first Order denying asylum that Martinez had not presented a credible testimonial claim sufficient to satisfy his burden of proof. Addressing Martinez's attempted explanation for the difference between his two stories, the BIA said, "We are not persuaded by the respondent's explanations for this discrepancy." On remand, the Board affirmed its adoption in its first Order of the IJ's adverse credibility finding, this time giving reasons for its decision:

> On July 25, 2003, the Ninth Circuit remanded the instant proceeding to the Board after finding that the Board failed to provide a specific, cogent reason for rejecting the respondent's justification for misrepresenting the basis of his fear. Through his appeal, the respondent incorporates a motion to remand to pursue relief under the Convention Against Torture ("CAT"). The respondent's appeal is dismissed. The respondent's motion is denied.

> Upon review, we affirm our prior resolution of the instant case. Specifically, we find that the respondent failed to sustain his burden of proof regarding asylum as the result of his lack of credibility. The record reflects that the respondent twice misrepresented the basis of his fear while testifying under oath (Exhs. 2 and 12). Specifically, we note that the respondent initially claimed that he had been persecuted on account of his political opinion, however, he subsequently retracted this claim and instead, asserted that he suffered persecution on account of his sexual orientation. We find this discrepancy material as it goes to the heart of the respondent's asylum claim.

> Although the respondent explained that the aforementioned misrepresentation was due to his fear of

experiencing additional persecution if the United States government learned of his sexual orientation, we do not find his justification persuasive. As observed by the Immigration Judge, the respondent spent more than 3 years in the Los Angeles area freely associating with other gays and furthermore, he did not experience any problems with any United States governmental authorities (I.J. at 17). As further noted by the Immigration Judge, the respondent exhibited an "articulate, intelligent and relaxed demeanor." *Id.* In sum, we adopted the Immigration Judge's decision below as the Immigration Judge articulated cogent reasons for his adverse credibility finding.

## III

**[1]** As the record reveals, Martinez repeatedly and persistently lied under oath with respect to his application for asylum. That his skillful lies were material and went to the heart of his presentation goes without saying. The IJ's reasons for his adverse credibility finding "bear a legitimate nexus" to his decision. *Salaam v. I.N.S.*, 229 F.3d 1234, 1238 (9th Cir. 2000); and we can discern no flaw in either the IJ's or the BIA's cogent reasoning. *Gui v. I.N.S.*, 280 F.3d 1217, 1225 (9th Cir. 2002). Thus, both the IJ and the BIA's specific adopted adverse credibility findings are well supported by substantial uncontroverted evidence in the record. *Al-Harbi v. I.N.S.*, 242 F.3d 882, 889-90 (9th Cir. 2001) (affirming negative credibility finding supported by applicant's "propensity to change his story regarding incidents of past persecution").

**[2]** An asylum seeker's incentive to lie is not curtailed by fear of the IJ's scrutiny or the government's fact checkers. These are only small obstacles that can be easily overcome. The major check on the asylum seeker's incentive to lie is an oath to tell the truth, and the asylum seeker's belief that he or she will be held to that oath. It is fair to say that the asylum

process is ultimately an honor system — it depends largely on the assumption that asylum seekers will take the oath seriously, and that they will be truthful in their testimony. The Ninth Circuit can do much to reduce the risk of error and to mitigate unfair procedures in immigration proceedings. However, in order for the process to work, we must construe and enforce the oath strictly, so that we may be more lenient elsewhere in the process. Accordingly, we deny Martinez's petition for review.[1]

Petition **DENIED**.

---

PREGERSON, Circuit Judge, Dissenting:

It was wrong for Martinez initially to tell a false tale about his persecution in Guatemala to immigration authorities. But it is not hard to see why a gay man who suffered persecution on account of his sexual orientation would want to hide that fact from immigration authorities. When Martinez filed his asylum application in 1992, the INS had not yet recognized that persecution on account of sexual orientation provided a valid basis for an asylum claim. *See Karouni v. Gonzales*, 399 F.3d 1163, 1171 (9th Cir. 2005). Indeed, before the Immigration Act of 1990, homosexuality was a ground on which to *exclude* any immigrant who wished to enter this country. *See* Pub. Law 101-649 § 601, 104 Stat. 4978, 5067 (1990); *see also* House Rep. No. 723(I), 101st Cong., 2d Sess., p. 56, reprinted in 1990 U.S. Code Cong. & Ad. News 6710, 6736. In this context, it is easy to understand how Martinez might have felt compelled to tailor his story to avoid being returned to Guatemala, where he suffered persecution on account of his sexual orientation.

---

[1] We conclude that the BIA did not abuse its discretion in concluding that Martinez failed to establish a prima facie case that warrants reopening under the Convention Against Torture.

In reviewing an IJ's adverse credibility finding regarding an asylum petitioner, our court in *Turcios v. INS* stated: "Untrue statements by themselves are not reason for refusal of refugee status[,] and . . . it is the examiner's responsibility to evaluate [the petitioner's false] statements in the light of all the circumstances of the case." *Turcios v. INS*, 821 F.2d 1396, 1400 (9th Cir. 1987) (finding that the lies petitioner told to immigration authorities actually *supported* petitioner's fear of deportation). If Martinez had filed his asylum application in 1992 alleging persecution on account of his sexual orientation, he would likely have been deported. Instead, Martinez initially alleged political persecution, a valid basis for an asylum claim in 1992, because he greatly feared being returned to Guatemala. It was not until April 1996 that the INS "formally adopted the 'position . . . that homosexuals *do* constitute a particular social group.' " *Karouni*, 399 F.3d at 1171 (quoting a Memorandum from David A. Martin, INS General Counsel, to All Regional and District Counsel (Apr. 4, 1996)). On April 23, 1996, nineteen days after the INS recognized that persecution based on sexual orientation was a valid ground for an asylum claim, Martinez explained his true reasons for seeking asylum in the United States in a detailed declaration.

Accordingly, I disagree with the BIA's finding that the IJ in the case before us "articulated cogent reasons for his adverse credibility finding." As in *Turcios*, the IJ's explanation that Martinez was not credible because initially he made false statements to immigration officials was insufficient. In fact, Martinez's statements may have "support[ed] his claim of fear of persecution," *Turcios*, 821 F.2d at 1401, because Martinez misrepresented the truth solely to avoid persecution in Guatemala based on his sexual orientation, in response to U.S. immigration policies forbidding such asylum claims at the time he made the statements.

Furthermore, nowhere does Martinez testify that he feared "additional persecution [in the United States] if the United

States government learned of his sexual orientation," as the BIA and Majority contend. Instead, Martinez's fear was premised on his belief that he would be further persecuted if the United States government were to deport him to Guatemala. The Majority states that the IJ's reasons for his adverse credibility finding did "bear a legitimate nexus" to the IJ's decision. I disagree. That Martinez was "freely associating with other gays" in Los Angeles has no bearing on or nexus to the IJ's decision that Martinez was not credible, nor does it have any bearing on or nexus to the suffering Martinez feared he would experience were he deported to Guatemala. Therefore the IJ's negative credibility finding — affirmed by the BIA — doesn't hold water.

Because the IJ did not articulate cogent reasons for his adverse credibility finding, and because the IJ did not provide a legitimate nexus between the reasons for his adverse credibility finding and his ultimate decision, Martinez's petition should not have been denied. Accordingly, I dissent.