NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0682n.06
Filed: August 9, 2005

No. 03-4592

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SALEH SAFADI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW FROM A |
| | ) | FINAL ORDER OF THE BOARD OF |
| ALBERTO GONZALES, Attorney General | ) | IMMIGRATION APPEALS |
| of the United States, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Before: KENNEDY, CLAY, and GILMAN**, **Circuit Judges**.

**RONALD LEE GILMAN, Circuit Judge.** Saleh Safadi, a citizen of Jordan, came to the United States in 1988 on a student visa. He later entered into a sham marriage with a United States citizen in order to extend his residency here. In March of 1997, Safadi filed an application for asylum and the withholding of removal, claiming that, because he is gay, he would be imprisoned or possibly executed if he were forced to return to Jordan. The immigration judge (IJ) denied Safadi's application on the ground that Safadi did not prove that he was in fact gay. He therefore failed to establish that he had a well-founded fear of future persecution on account of his membership in a particular social group.

In particular, the IJ found that Safadi's testimony lacked credibility because he had previously entered into a sham marriage for the purpose of obtaining an immigrant visa, and because

Safadi's asylum application was inconsistent with his testimony at the hearing. Safadi appealed the denial to the Board of Immigration Appeals (BIA), which affirmed the IJ's decision. He then timely appealed to this court. For the reasons set forth below, we **DENY** Safadi's petition for review of the decision by the BIA.

## I. BACKGROUND

Safadi, a 37-year-old citizen of Jordan, entered the United States in 1988 to attend Wichita State University. He moved to Detroit, Michigan approximately one year later. In 1992, he married an American woman named Jami Easterly, who promptly applied for an immigrant visa on his behalf. Safadi subsequently filed an application to adjust his immigration status on that basis. During an interview with the Immigration and Naturalization Service (INS), Safadi stated that he was living with Easterly in a legitimate marriage and presented documentation to that effect. But when the INS denied his adjustment application in January of 1996, Safadi and Easterly sought a divorce that became effective four months later.

Safadi subsequently filed an application for asylum and the withholding of removal in March of 1997, based on an alleged fear of persecution in Jordan on account of his homosexuality. He claims that, notwithstanding his previous marriage to Easterly, he has known that he was gay since he was 13 years old, and that he began a committed, live-in relationship with a man named Wesley Hoskins soon after he arrived in Detroit. The IJ determined that Safadi was not credible because he had, by his own admission, lied to the INS about his marriage in his adjustment application in order to gain an immigration benefit, and because his asylum application was inconsistent with his

testimony at the hearing. In denying his application, the IJ expressed doubt as to whether Safadi was in fact gay, concluding that his application was apparently "yet another elaborately constructed scenario to permit [Safadi] to remain in the United States."

Safadi appealed the IJ's decision to the BIA. The BIA affirmed the ruling below, deferring to the "Immigration Judge's finding that [Safadi] lacks credibility." Safadi has timely petitioned this court for a review of the BIA's decision.

## II. ANALYSIS

### A. Standard of review

We will uphold the decision of the BIA if it is supported by reasonable, substantial, and probative evidence. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). An adverse credibility determination is a finding of fact and is therefore reviewed under the same substantial-evidence standard. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). Under this standard, we will not reverse a factual determination of the BIA unless we find "that the evidence not only supports a contrary conclusion, but *compels* it." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (emphasis in original) (citation omitted).

### B. The BIA did not err in upholding the finding of the IJ that Safadi's testimony was not credible

Pursuant to the Immigration and Nationality Act (INA), an applicant for asylum must show that he is a "refugee." 8 U.S.C. § 1158(b). A refugee is a individual who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.

§ 1101(a)(42)(A). Safadi argues that he is entitled to asylum because he risks imprisonment or possible execution on account of his homosexuality if he is forced to return to Jordan. But the IJ concluded that Safadi had failed to establish his status as a refugee because he did not satisfy the threshold requirement of proving that he is gay.

Safadi, however, argues that the IJ erred in discrediting his testimony and the other evidence that he presented to establish his claim. Specifically, he contends that the IJ erred in basing her adverse credibility finding on his unlawful attempt to obtain immigrant status through his marriage to Easterly and on the inconsistencies between his asylum application and his testimony at the hearing. He also claims that the IJ failed to give adequate weight to the evidence that he submitted regarding the treatment of gay men in Jordan.

Safadi cites a number of cases holding that certain acts of dishonesty are not necessarily sufficient to warrant a finding that the petitioner's testimony lacks credibility. For example, in *In re O-D-*, 21 I. & N. Dec. 1079 (BIA 1998), the IJ determined that the asylum applicant's testimony at his hearing was not credible because the Mauritanian identity card that he had submitted was a "known counterfeit," and because the birth certificate that he submitted was "probably counterfeit." *Id.* at 1079, 1082. The BIA, however, explained that such falsifications are not necessarily proof of a lack of credibility, noting that

> in the context of an asylum adjudication, there may be instances in which a respondent voluntarily and intentionally submits a document into evidence, intending to establish his eligibility for asylum, that is later shown to be counterfeit. The adjudicator may consider whether that document points to [an applicant's] lack of credibility regarding the asylum claim. Ordinarily, it is reasonable to infer that a respondent with a legitimate claim does not usually find it necessary to invent or fabricate documents in order to establish asylum eligibility. On the other hand, there

> may be reasons, fully consistent with the claim of asylum, that will cause a person to possess false documents, such as the creation and use of a false document to escape persecution by facilitating travel.

*Id.* at 1083. In *O-D-*, the BIA ultimately concluded that the applicant had not provided a satisfactory explanation regarding his use of the fraudulent documents. It therefore upheld the IJ's adverse credibility finding. *Id*. at 1083-84. But the decision suggests that, if the applicant had been able to prove that his resort to the use of a counterfeit identification card and a false birth certificate had been necessary to escape persecution, the use of such documents alone would not have supported an adverse credibility finding.

Safadi argues that his marriage to Easterly, admittedly a sham, was necessary to prevent his removal from the United States. According to Safadi, if he is returned to Jordan, he would be forced to either hide his sexual orientation or risk imprisonment or execution. He therefore claims that the act of entering into a sham marriage in order to escape future persecution in Jordan was analogous to the presentation of false documents contemplated by the BIA in *O-D-*, with the result that the marriage should not adversely affect his credibility.

Another case relied on by Safadi is *Turcios v. INS*, 821 F.2d 1396 (9th Cir. 1987), where the IJ determined that the petitioner, a citizen of El Salvador, lacked credibility because he had admittedly lied to immigration officials in telling them on three separate occasions that he was a citizen of Mexico. The Ninth Circuit reversed the adverse credibility determination, explaining that "[u]ntrue statements by themselves are not reason for refusal of refugee status and it is the examiner's responsibility to evaluate such statements in the light of all the circumstances of the case." *Id.* at 1400. It further held that "[the petitioner's] misrepresentations are wholly consistent

with his testimony and application for asylum: he did so because he feared deportation to El Salvador. In this context, [the petitioner's] statement to the INS does not detract from but supports his claim of fear of persecution. It does not support a negative credibility finding." *Id.* at 1400-01.

Safadi argues that, like the petitioner in *Turcios*, his marriage to Easterly actually buttresses his case for asylum because it illustrates his desperate desire to remain in the United States. He claims that he honestly believed that marrying an American woman with whom he was not in love was the only way to prevent his removal to Jordan and to allow him to continue his relationship with Hoskins. *See also Akinmade v. INS*, 196 F.3d 951, 955-56 (9th Cir. 1999) (holding that an asylum applicant's use of a fraudulent Canadian passport to gain entry into the United States cannot serve as the basis for an adverse credibility determination because his use of the passport was consistent with his desire to flee persecution in Nigeria).

Other cases, however, reach the opposite conclusion; namely, that previous incidents involving dishonesty can be sufficient to support an adverse credibility finding. For example, in *Sarvia-Quintanilla v. INS*, 767 F.2d 1387, 1393 (9th Cir. 1985), the Ninth Circuit upheld the finding of the IJ that the petitioner's credibility was "very much in doubt." It concluded that, because the petitioner had an admitted history of dishonesty, including lying to obtain a Mexican passport, lying to U.S. immigration officials, and illegally bringing aliens into the United States, the IJ's "decision to give his testimony 'very little weight' was the only reasonable one." *Id.* at 1393. *See also Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000) ("[W]hen the circumstances are conducive to lying, [a] well-supported suspicion of mendacity may serve as a legitimate basis for the factfinder's reasonable inferences concerning the ultimate facts at issue."); *Smolen v. Chater*,

80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony . . . is credible, the [judge] may consider, for example[,] . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid. . . .").

The government contends that Safadi's marriage to Easterly "demonstrated a propensity to lie, under oath, for the purpose of obtaining asylum." As a result, it argues, the IJ's determination that his testimony was not credible is supported by substantial evidence and should not be reversed. We need not decide, however, whether Safadi's sham marriage alone is enough to support an adverse credibility finding, because the IJ's determination was also based on the discrepancies between Safadi's application for asylum and the testimony he presented at his asylum hearing. In particular, the IJ identified two "significant inconsistencies." First, in his application for asylum, Safadi stated that he met Hoskins at a gay bar in Detroit in 1989 and moved in with Hoskins five days later. Safadi testified at his hearing, however, that he initially moved into the same apartment building as Hoskins and then, at some point later on, moved into a shared apartment. Hoskins, on the other hand, testified that he and Safadi moved in together two weeks after they first met, apparently without having first lived in the same apartment building. The IJ noted that "[c]learly there is [sic] some inconsistencies between the testimony of these two individuals on this issue."

Second, Safadi stated in his affidavit that, when his parents visited him in Detroit in 1992, Hoskins moved out of the house for the duration of the parents' three-month visit. He also recalled that his parents became concerned that Easterly was not present during their visit as much as they had expected she would be. According to his application, Safadi was therefore forced to admit to

his parents that his marriage was a sham. But Safadi testified at his hearing that Hoskins, who had been introduced to Safadi's parents as his "roommate," remained in the apartment during the entire visit and slept on the couch. Hoskins, moreover, testified that Easterly lived with them during that time as well. He also testified that Safadi never told his parents that the marriage was a sham or that Safadi and Hoskins were involved in a romantic relationship.

In addition to the above two inconsistencies that the IJ found to be material, she also noted a number of other "less significant inconsistencies." These included conflicting testimony regarding whether Hoskins was aware of the religion of Safadi's parents and whether Safadi and Hoskins engaged in "open exhibitions of affection, publicly or in their own home."

We conclude that the various discrepancies, coupled with the pall cast on Safadi's credibility by his fraudulent marriage, are sufficient to support the adverse credibility finding by both the IJ and the BIA. *See Chebchoub v. INS*, 257 F.3d 1038, 1043 (9th Cir. 2001) (upholding the BIA's adverse credibility finding because the applicant's testimony was "vague, inconsistent[,] and implausible," and explaining that "[a]lthough only one inconsistency can be sufficient, here at least two of the inconsistencies cited by the Board are not minor as they relate to the basis for [the applicant's] alleged fear of persecution and go to the heart of [his] asylum claim") (citation and quotation marks omitted); *Berroteran-Melendez v. INS*, 955 F.2d 1251, 1256-57 (9th Cir. 1992) (holding that inconsistencies regarding the number of times an asylum applicant was incarcerated and his rank in the National Guard, coupled with the lack of detail in his application for asylum, supported the IJ's finding that the applicant was not credible).

Safadi, however, contends that all of the inconsistencies cited by the IJ were minor and therefore do not constitute substantial evidence that he lacks credibility. To the contrary, the record reflects that the inconsistencies cited by the IJ raise questions as to whether Safadi is in fact gay and as to the nature of his relationship with Hoskins. These issues are central to his asylum claim. We therefore conclude that the IJ's adverse credibility finding is supported by substantial evidence. *See Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004) ("An adverse credibility finding must be based on issues that go to the heart of the applicant's claim."). Because the IJ's determination that Safadi was not a member of a particular social group for asylum purposes is supported by substantial evidence, we need not determine whether the IJ properly considered the evidence submitted by Safadi regarding the treatment of gay men in Jordan.

**C.    Safadi's due process rights were not violated by the allegedly intimidating conduct of the IJ during his hearing**

Safadi also argues that his due process rights were violated because the IJ, "through non-verbal forms of communication, create[d] an atmosphere in the courtroom, which intimidated the Petitioner and his witnesses, thereby resulting in the denial of a fundamentally fair trial." The BIA rejected this contention on the ground that Safadi "has not alleged, and our review of the transcript does not reveal, any conduct that would constitute a due process violation." It added that "we fail to see how any non-verbal action of the Immigration Judge would either explain the numerous inconsistencies noted above, or excuse [Safadi's] past history of fraud against the former INS, both of which underlie the fundamental adverse credibility finding here."

To prove that his due process rights were violated, an alien must show that he was "prejudiced by a procedural defect in his deportation proceeding." *In re Santos*, 19 I. & N. Dec. 105, 107 (BIA 1984). Safadi has not pointed to any specific instances of intimidation or procedural errors, much less established that a due process violation occurred. Instead, he simply claims that the IJ's "repeated misrepresentation of his testimony; her recurrent, impatient mis-summation of Petitioner's testimony; the arbitrary discrediting of witnesses and evidence; and her overly hostile behavior towards the Petitioner" deprived him of due process. Because Safadi has neither described with particularity the nonverbal conduct he complains of, nor established that the alleged misconduct affected the outcome of the proceedings, his due process claim lacks merit. *See Chan v. INS*, 634 F.2d 248, 258 (5th Cir. Jan. 1981) ("Totally aside from the doubtful merits of his contentions, each of these due process attacks fails because proof of a denial of due process in an administrative proceeding requires a showing of substantial prejudice.").

## III. CONCLUSION

For all of the reasons set forth above, we **DENY** Safadi's petition for review of the decision by the BIA.