NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0542n.06

No. 08-4047

**FILED**
**Aug 06, 2009**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ZUHAIR FARIS BANIFADEL, | ) | |
| | ) | |
| Petitioner, | ) | PETITION FOR REVIEW OF THE |
| | ) | BOARD OF IMMIGRATION APPEALS |
| v. | ) | |
| | ) | OPINION |
| ERIC H. HOLDER, JR., | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Before: GILMAN and McKEAGUE, Circuit Judges; and SARGUS, District Judge.**[*]

**RONALD LEE GILMAN, Circuit Judge.** Zuhair Faris Banifadel, a Palestinian native of

the West Bank, applied for asylum, withholding of removal, and relief under the Convention Against

Torture (CAT). He claims that the Palestinian organization Hamas beat and threatened him because

he refused to join them. After a hearing, the immigration judge (IJ) assigned to Banifadel's case

found that he was not credible and that his claims failed on the merits. The Board of Immigration

Appeals (BIA) affirmed. For the reasons set forth below, we **DENY** Banifadel's petition for review.

## I. BACKGROUND

**A.    Banifadel's immigration proceedings and hearing testimony**

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting
by designation.

Banifadel entered the United States in September 2005 as a nonimmigrant visitor. His visa permitted him to stay in the country until March 2006, but he did not leave by that date. (JA 215) The Department of Homeland Security commenced removal proceedings against him in August 2006. (*Id.*) Banifadel conceded removability at the initial calendar hearing, but subsequently applied for asylum, withholding of removal, and relief under the CAT. (JA 55, 191-210) The IJ held a May 2007 hearing on Banifadel's application. (JA 19)

The first subject covered in the hearing was Banifadel's marital status. Counsel for the government established that Banifadel had married a United States citizen but never lived with her. In fact, the woman became pregnant with another man's child prior to Banifadel's hearing. The government asserted that the marriage was a sham. (JA 78)

Banifadel's counsel conceded that Banifadel had entered into the marriage in an attempt to protect himself for immigration purposes. (JA 79) But counsel explained that Banifadel's putative wife never filed a Petition for Alien Relative (Form I-130) with the government, and that once Banifadel realized that a sham marriage to a United States citizen would not give him immigration protection, he "backed off" that idea. (JA 79-80) Banifadel's counsel further noted that the IJ should consider Banifadel's application solely as an application for withholding of removal because Banifadel had not filed it within one year of his arrival in the United States, and thus did not meet the deadline for filing an asylum application. (JA 80)

The IJ next heard Banifadel's testimony. Banifadel stated that he had lived in the West Bank and had a job building towers for an electrical company for about 15 years. (JA 88) He said that he began to have problems in March 2004, when Hamas members approached him about joining the organization. (JA 84) Banifadel thought that Hamas wanted him to work for them "so they can use

me as a barrier [sic] to transfer between Palestine and Israel, some like weapons, some . . . stuff," because his job required him to go into Israel. (JA 86) When Banifadel refused to join them, the Hamas members beat him with sticks, "but not too bad." (JA 84, 89) Banifadel stated that "[t]hey hit me as a threat. They didn't want to make a big scar on my body, but they just teach me a lesson." (JA 89)

Banifadel said that Hamas members again asked him to join them in June 2004, but he again refused. (JA 84, 89-90) According to Banifadel, the Hamas members once more hit him with sticks as a threat, but the beating was not severe. Banifadel testified that he never had to go to a hospital or see a doctor as a result of the attacks. (JA 92)

He further said that Hamas members approached him for a third and final time in 2005, threatening that if he did not join them, they would "condemn" him. (JA 85) Banifadel remembers the Hamas members telling him that "it would be the last time. If you are not going to follow us, we're going to slaughter your neck." (JA 90) Hamas did not physically assault him during this encounter. (JA 90-91)

Banifadel subsequently applied for a visa to visit the United States in July 2005. He fears returning to the West Bank because "[i]f I go back to Palestine, I would be scared because either I go with them [Hamas], follow their orders and rules, and/or they will kill me." (JA 86) Banifadel did not believe that Hamas was actively looking for him at the time of the hearing, "but of course, they wait for the moment I go back." (JA 87) When asked whether he had complained to anyone, including the police or military, about the threats from Hamas, Banifadel testified that he had not because he believed that, "[i]f I report it, nobody will help me." (JA 91) He also stated that Hamas

would know who he was regardless of where he lived, and that there was accordingly nowhere in the West Bank he could live in safety. (JA 110)

Banifadel has four brothers and a sister currently living in the West Bank. (JA 96) Hamas has not threatened or otherwise contacted Banifadel's siblings. He explains that this is because "Hamas don't need them. Hamas needs me." (JA 96) Banifadel further testified that he has never been detained in an Israeli, Palestinian, or Jordanian prison. (JA 91-92)

The government attorney asked Banifadel why, if he had fear of Hamas, he did not promptly apply for asylum once he was in the United States. (JA 93) Banifadel responded that he had heard from a friend, who had spoken to an attorney in Louisiana, that people from Palestine were not allowed asylum in the United States. (*Id.*) The only thing Banifadel remembered about the attorney was that his first name was David. (*Id.*)

Finally, Banifadel was asked whether he had married his American wife for immigration purposes. He answered, "In the beginning, yes. Just to protect myself. I had no other way to go." (JA 94) Banifadel testified that his putative wife had been a coworker at a convenience store in Jackson, Tennessee, and had agreed to marry him to help him out as a friend. (*Id.*) He never lived with the woman and he knew that she was pregnant with another man's child. (*Id.*) Banifadel brought no documentation of any kind to the hearing, and no witnesses (other than himself) testified. (JA 95)

## B. The IJ's decision

At the conclusion of the hearing, the IJ issued an oral ruling denying Banifadel's application. (JA 44) The IJ found that Banifadel's testimony was not credible, focusing mainly on Banifadel's "sham marriage" to a woman who was pregnant with another man's child when Banifadel was

supposed to have been living with her. (JA 45) That marriage, the IJ noted, put the court "into an impossible situation of being asked to believe the testimony of somebody who is seeking withholding of removal, thus believing [Banifadel's] testimony for one purpose, but also being required to believe that testimony notwithstanding [Banifadel's] efforts to work a fraud on the immigration system." (JA 46)

Setting aside the credibility issue, the IJ found that Banifadel had nonetheless failed to meet his burden of proof for withholding of removal. (JA 46) (The IJ did not consider Banifadel's application as one for asylum because it was filed after the one-year filing deadline.) First, the IJ cited Banifadel's total lack of corroboration for his testimony, noting that Banifadel could reasonably have obtained documentation from his siblings in the West Bank. (*Id.*) Next, citing *INS v. Elias-Zacarias*, 502 U.S. 478 (1992), the IJ held that Banifadel had failed to show that an imputed political opinion was at least one reason for his mistreatment. (JA 47-48) The IJ pointed out that Banifadel had failed to show that he had any political opinion, except that he was vaguely against Hamas and supported peace. Hamas appeared to the IJ to have sought to recruit Banifadel only for the purpose of smuggling weapons. (JA 48)

The IJ additionally found that Banifadel had failed to establish that he had suffered past persecution or held a well-founded fear of future prosecution. (JA 48-49) Considering Banifadel's two mild beatings, the IJ noted that the "Sixth Circuit has held that detentions and even fairly severe beatings do not constitute persecution," citing *Pilica v. INS*, 388 F.3d 941, 954 (6th Cir. 2004) (holding that the applicant's beating by policemen, which resulted in head injuries and a week-long hospitalization, coupled with two brief periods of imprisonment, were isolated incidents that did not amount to persecution). (JA 48) The IJ also found that Banifadel had not shown a well-founded fear

of future persecution because none of Banifadel's family members were harassed by Hamas after he left the West Bank, citing *Matter of A-E-M-*, 21 I&N Dec. 1157, 1160 (BIA 1998) (noting that the applicant's fear-of-persecution argument was undercut by the fact that none of his family members had been harmed by the Shining Path terrorist group since he departed from Peru). (*Id.*)

Finally, as to Banifadel's CAT claim, the IJ found that Banifadel failed to show a clear probability that he would be tortured if he returned to the West Bank. The IJ pointed out that Banifadel had not (1) suffered persecution or torture in the past, (2) established that everywhere in the West Bank was unsafe for him, or (3) showed that Hamas was seeking him out. Banifadel was accordingly ordered removed to the West Bank. (JA 50)

### C. The BIA's decision

Banifadel filed a notice of appeal to the BIA in June 2007. (JA 33-35) The BIA dismissed the appeal in July 2008. (JA 6-7) As for the timing of Banifadel's asylum application, the BIA agreed with the IJ that Banifadel had failed to provide a valid excuse for his late application and that, in any event, Banifadel had conceded in the hearing that his application for asylum was time-barred. (JA 6) The BIA also affirmed the IJ's rulings that denied withholding of removal and relief under the CAT. (JA 6-7)

## II. ANALYSIS

### A. Standard of review

"Because the BIA adopted the IJ's decision with additional commentary, we review the decision of the IJ, as supplemented by the BIA, as the final administrative order." *Ceraj v. Mukasey*,

511 F.3d 583, 588 (6th Cir. 2007). Questions of law involving immigration proceedings are reviewed de novo. *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). But the IJ's factual findings will not be disturbed if substantial evidence supports such findings. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (holding that a factfinder's findings will be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole") (citation omitted). Under this standard, we will not reverse a factual determination of the IJ unless we find "that the evidence not only supports a contrary conclusion, but *compels* it." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (emphasis in original).

**B.      Asylum application**

As an initial matter, we note—and Banifadel concedes—that we lack jurisdiction to review the denial of an asylum application to the extent that an appeal seeks review of discretionary or factual rulings. 8 U.S.C.S. § 1252(a)(2)(D) ; *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006) (construing § 1252(a)(2)(D) to bar this court's consideration of asylum applications rejected for untimeliness except where an appeal seeks review of constitutional claims or matters of statutory construction). Banifadel does not advance any constitutional or statutory-construction issues regarding the denial of his asylum application. We are therefore limited to reviewing the merits of the IJ's and the BIA's findings that Banifadel was not entitled to withholding of removal or relief under the CAT.

**C.      Withholding of removal**

*1.      Legal framework*

A petition for withholding of removal is a request that the Attorney General halt removal proceedings if the alien's "life or freedom would be threatened in that country because of the alien's

race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An applicant may satisfy his or her burden of proof for withholding of removal by demonstrating that the applicant has suffered past persecution in the country of removal on account of one of the aforementioned reasons. 8 C.F.R. § 1208.16(b)(1)(i). This showing triggers a rebuttable presumption that the applicant's life or freedom would be threatened in the future if removed to that country. *Id.*

An applicant may alternatively seek withholding of removal by establishing that "it is more likely than not" that he or she would suffer harm in the future upon removal to the home country—even if the applicant has not suffered past persecution. 8 C.F.R. § 1208.16(b)(2). This is a more demanding burden of proof than the one employed for evaluating an asylum claim, which requires only that an applicant establish a "well-founded fear of persecution." 8 C.F.R. § 1208.13(b)(2); *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998) (rejecting an applicant's withholding-of-removal claim because he could not satisfy the less stringent standard for asylum eligibility).

Corroborating documents are not necessarily required to satisfy an applicant's burden of proof. "[T]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (citations omitted). But if corroborating documents are reasonably available, "[t]he absence of such corroborating evidence can lead to a finding that an applicant has failed to meet [his or] her burden of proof." *Id.*

An IJ's credibility determination is considered a finding of fact and is reviewed under the deferential substantial-evidence standard. *Duan Ying Chen v. Gonzales*, 447 F.3d 468, 472 (6th Cir. 2006). Under the REAL ID Act of 2005, which applies to applications, such as Banifadel's, filed

on or after May 11, 2005, an IJ may base an adverse credibility finding on inconsistencies, inaccuracies, or falsehoods "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii).

### 2. *The IJ's denial of withholding of removal is supported by substantial evidence*

#### a. *Credibility*

In rejecting Banifadel's application for withholding of removal, the IJ first found that Banifadel's testimony was not credible. The IJ based this finding largely on Banifadel's admission that he had entered into a marriage solely for immigration purposes.

Banifadel argues on appeal that the IJ's credibility finding was unreasonable because "there are any number of reasons why someone might engage in a sham marriage that are wholly *consistent* with a fear of returning to the country of origin." (Banifadel Br. at 6-7 (Emphasis in original.)) In support of this argument, Banifadel cites *In re O-D-*, 21 I&N Dec. 1079 (BIA 1999), for the proposition that individuals who flee persecution often use fraudulent documents to procure entry into the United States. In *In re O-D-*, the IJ had determined that the applicant was not credible because the Mauritanian identity card and birth certificate submitted into evidence were, respectively, "a known counterfeit" and "probably counterfeit." *Id.* at 1083. The BIA upheld the IJ's adverse credibility finding on the basis that the applicant had not provided a satisfactory explanation for his use of the fraudulent documents. *Id.* at 1083-84. But the BIA's decision suggested that, if the applicant had been able to prove that his use of a counterfeit identification card and a false birth certificate had been necessary to escape persecution, the use of such documents alone would not have supported an adverse credibility finding.

This court considered the impact of a sham marriage on an applicant's credibility in *Safadi v. Gonzales*, 148 F. App'x 372 (6th Cir. 2005). That decision discussed the implications of *In re O-D-* as well as caselaw from other circuits that have addressed the propriety of an IJ considering an applicant's previous instances of dishonesty in assessing credibility. *Id.* at 374-76. The court ultimately concluded that it was not required to decide whether the sham marriage, standing alone, was enough to support an adverse credibility finding because the IJ's adverse credibility determination was based on other discrepancies between the applicant's application and his hearing testimony. *Id.* at 376.

*Safadi* is of limited assistance to our analysis in this case because it applied this circuit's pre-REAL ID Act standard of review for credibility determinations. We have only recently begun to hear petitions for review to which the REAL ID Act credibility standard *does* apply, so the issue of whether a sham marriage *on its own* can justify an adverse credibility finding is one of first impression. The REAL ID Act's clarification that an "inconsistency, inaccuracy, or falsehood" in an applicant's testimony need not go to the heart of the applicant's claim would seem to suggest that a sham marriage, standing alone, could justify an adverse credibility finding. But an important complicating factor in this case is that Banifadel never actually attempted to use his sham marriage to his benefit for immigration purposes. In other words, Banifadel got married in the hope that marriage to a U.S. citizen would eventually allow him to stay in the United States, but his wife never filed a Form I-130. As his counsel noted, Banifadel essentially "backed off" the idea. We need not decide this issue because, as discussed below, Banifadel has not otherwise established his eligibility for withholding of removal.

### b. *Lack of corroboration*

-10-

Even if an immigration judge finds an applicant to be credible, "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (quoting *In re S-M-J*, 21 I& N Dec. 722, 724-26 (BIA 1997)). This court has applied this standard to deny asylum or withholding of removal from applicants who have failed to corroborate their otherwise credible testimony of past or threatened persecution. In *Dorosh*, for example, the court rejected Dorosh's excuses for her lack of corroborating evidence—that she had been unable to contact her mother in Ukraine because her mother did not have a telephone, and that contacting her mother or girlfriends would have jeopardized their safety. The court agreed with the BIA that it was reasonable to expect Dorosh to have requested corroborating letters in a way that minimized any risk to others. It therefore concluded that the Dorosh's asylum claim failed on the merits due to a lack of corroborating evidence *Id.* at 383-84.

Likewise, in *Yinggui Lin v. Holder*, 565 F.3d 971 (6th Cir. 2009), the petitioner was a Falun Gong practitioner who had allegedly fled from persecution in China. *Id.* at 974. Even though the IJ had found Lin to be credible, he denied asylum based on Lin's failure to present any corroborating evidence of his Falun Gong practice either in China or in the United States. *Id.* at 975. This court held that substantial evidence supported the IJ's conclusion that Lin could reasonably have been expected to produce corroboration for his testimony. *Id.* at 978.

Here, Banifadel introduced no documentary evidence or any witnesses to support his testimony. The IJ specifically noted that Banifadel had not even introduced evidence to document that he had actually worked for an electrical company that did jobs in both Israel and Palestine.

(JA 27-28) Banifadel admitted in his testimony that he did not have any papers showing that he had ever worked for the company, but said that he "c[ould] obtain such documentation." (JA 95)

We conclude that substantial evidence supports the IJ's determination that corroboration was reasonably available under the circumstances. Several of Banifadel's close family members—including four brothers and a sister—resided in the West Bank at the time of the hearing and could have provided evidence supporting his claims. Banifadel did not assert, and the record does not indicate, that his family members had any reason to fear that they would be harmed by Hamas for assisting him. To the contrary, Banifadel testified that Hamas was not currently looking for him and that his family had not been contacted by the organization. (JA 87) More significantly, Banifadel himself testified that documentary proof of his employment was available to him, but that he had not brought it to the hearing. (JA 95)

Banifadel has thus failed to meet his burden of proof for withholding of removal because he could reasonably have been expected to produce corroborating evidence to support his testimony, but did not do so. *Dorosh*, 398 F.3d at 382. This issue is dispositive, so we need not address the IJ's alternative bases for rejecting Banifadel's claim.

**D.      Relief under the CAT**

To obtain relief under the CAT, Banifadel must show that he would more likely than not be subjected to torture after being deported to the West Bank. *See* 8 C.F.R. § 1208.16(c)(2) (placing on the applicant seeking relief under the CAT the burden of proving "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal"); *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) (reciting the same standard). The IJ, in assessing the risk of future torture, must consider (1) evidence of any past torture inflicted upon the applicant; (2) evidence that

the applicant can relocate to a part of the country of removal where he or she is not likely to be tortured; (3) evidence of gross, flagrant, or mass violations of human rights within the country of removal; and (4) any other relevant information regarding conditions in the country of removal. *Mapouya v. Gonzales*, 487 F.3d 396, 414-415 (6th Cir. 2007).

As discussed in Part II.C.2.b. above, Banifadel failed to provide any corroborating evidence relating to the specifics of his alleged persecution at the hands of Hamas. He instead bases his CAT claim solely on the general human rights record of the Palestinian Authority, rather than on any clear probability that he, specifically, would be tortured if returned to the West Bank. (Banifadel Br. at 10-11)

Such statements, even if taken at face value, do not show that it is more likely than not that Banifadel himself would be subject to such treatment, and he therefore cannot succeed on his claim for relief under the CAT. *See Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006) (rejecting a CAT claim by a petitioner who generally cited Israel's record of torturing and detaining certain Palestinians). We thus conclude that the IJ properly denied Banifadel's application for relief under the CAT

### III. CONCLUSION

For all of the reasons set forth above, we **DENY** Banifadel's petition for review.